**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| GREGORY HOFFERT and PRASHANT SHARAN, individually and on behalf of all others similarly situated, | NO.2:26-cv-01360 |
| Plaintiffs, | **PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | **DEMAND FOR JURY TRIAL** |
| NINTENDO OF AMERICA INC., | |
| Defendant | |

Plaintiffs Gregory Hoffert and Prashant Sharan ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendant Nintendo of America Inc. ("Defendant" or "NOA").[1] The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

---

[1] NOA is a wholly owned subsidiary of Nintendo Co., Ltd. ("NCL") (collectively with NOA, "Nintendo").

PLAINTIFFS' CLASS ACTION COMPLAINT - 1

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

## NATURE OF THE CASE

1.     This class action arises from Nintendo's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.     Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.     Major U.S. importers—including Nintendo—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4.     On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

5.     As a consequence of that decision, importers who paid those tariffs—including Nintendo—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6.     The economic reality of the tariff regime, however, is that importers like Nintendo did not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7.     Nintendo therefore collected the tariff costs from consumers through elevated pricing, while seeking refunds of the same tariff payments from the federal government.

8.     Unless restrained by this Court, Nintendo stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9.     Nintendo has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

10.     This lawsuit seeks to prevent that unjust result.

PLAINTIFFS' CLASS ACTION COMPLAINT - 2

11.     Plaintiffs bring this action on behalf of millions of consumers who purchased goods from Nintendo during the tariff period and who paid inflated prices reflecting Nintendo's pass-through of unlawful tariffs.

12.     Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

**JURISDICTION AND VENUE**

13.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

14.     The Court has personal jurisdiction over Defendant because Nintendo is headquartered in this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in Issaquah, Washington, and a substantial portion of the events and conduct giving rise to the claims occurred in the Western District of Washington.

**PARTIES**

18.     Plaintiff Gregory Hoffert is a resident and citizen of Fair Oaks, California. During the Class Period, Plaintiff Hoffert purchased goods from Nintendo that were imported from countries subject to the IEEPA tariffs. Plaintiff Hoffert paid retail prices for those goods that were increased by Nintendo to account for the tariffs imposed on imported products. Plaintiff Hoffert would not have paid those higher prices absent the unlawful tariffs and Nintendo's pass-through of those tariffs to consumers.

19.     Plaintiff Prashant Sharan is a resident and citizen of Seattle, Washington. During the Class Period, Plaintiff Sharan purchased goods from Nintendo that were imported from

PLAINTIFFS' CLASS ACTION COMPLAINT - 3

countries subject to the IEEPA tariffs. Plaintiff Sharan paid retail prices for those goods that were increased by Nintendo to account for the tariffs imposed on imported products. Plaintiff Sharan would not have paid those higher prices absent the unlawful tariffs and Nintendo's pass-through of those tariffs to consumers.

20.    Defendant Nintendo of America Inc. is a Washington corporation with its principal place of business at 4600 150th Ave NE, Redmond, WA 98052. NOA is a wholly owned subsidiary of Nintendo Co., Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan. NOA is responsible for the marketing, distribution, and sale of Nintendo's products in the United States. NCL develops and designs electronic video game consoles, games, and accessories, including the Nintendo Switch, Nintendo Switch Lite, Nintendo Switch OLED consoles, and the Nintendo Switch 2 console. A significant portion of the products Nintendo sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A.    Nintendo's Business

21.    Nintendo is one of the leading developers and manufacturers of video games and video game consoles in the United States.

22.    In 1985, Nintendo released the Nintendo Entertainment System, or "NES," in the United States, which introduced millions of fans to now-classic games like Super Mario Bros., The Legend of Zelda, and Donkey Kong.

23.    Over the next several decades, Nintendo released additional gaming consoles including Super Nintendo Entertainment System, Nintendo 64, Nintendo GameCube, Wii, Wii U, and Nintendo Switch.

PLAINTIFFS' CLASS ACTION COMPLAINT - 4

24. Most recently, Nintendo launched the Nintendo Switch 2 in the United States in June 2025. According to analysts, the Nintendo Switch 2 was the best-selling console of 2025, selling approximately 4.4 million units in the United States.[2]

25. Nintendo also manufactures hardware and accessories for its gaming consoles. For example, consumers may purchase Joy-Con controllers, Pro Controllers, Joy Con Grips, and Docks to use with their Nintendo Switch 2 consoles. These items are sold separately from the Nintendo Switch 2 console.

26. Nintendo manufactures all of its products outside of the United States in places such as China, Vietnam, and Cambodia.[3] Imported goods therefore account for all of Nintendo's retail sales in the United States. Because Nintendo imports all of the goods it sells, the IEEPA tariffs directly increased Nintendo's cost of importing merchandise into the United States.

**B.    The IEEPA Tariffs**

27. Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[4]

28. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[5]

---

[2] Rebekah Valentine, *Nintendo Switch 2 Was the Best-Selling Console of 2025 in the U.S. and Is Still Outpacing the Nintendo Switch* (January 22, 2026), available at https://www.ign.com/articles/nintendo-switch-2-was-the-best-selling-console-of-2025-in-the-us-and-is-still-outpacing-the-nintendo-switch (last visited April 13, 2026).
[3] Nintendo Financial Results Briefing for Fiscal Year Ended March 2025 (May 8, 2025) at 4, available at https://www.nintendo.co.jp/ir/pdf/2025/250509e.pdf
[4] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[5] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

PLAINTIFFS' CLASS ACTION COMPLAINT - 5

29.     The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Nintendo.[6]

30.     Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Nintendo—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[7]

31.     Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[8]

32.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[9]

33.     The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Nintendo—to seek refunds of the tariffs previously collected by the federal government.

C.      **Tariffs Are Economically Borne by Consumers**

34.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

---

[6] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[7] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers.*

[8] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

[9] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

PLAINTIFFS' CLASS ACTION COMPLAINT - 6

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

35.     Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[10]

36.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[11] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

37.     Nintendo followed this same pattern during the tariff period. As a major importer of consumer goods, Nintendo faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.

38.     Indeed, as detailed below, Nintendo executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Nintendo leadership explained that tariffs increased the company's merchandise costs and required Nintendo to evaluate price adjustments and other operational responses designed to manage those additional expenses.

39.     As a result, consumers who purchased goods from Nintendo during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Nintendo's retail pricing.[12]

---

[10] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[11] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.)

[12] *See* Nintendo, *Nintendo Maintains Nintendo Switch 2 Pricing, Retail Pre-Orders to Begin April 24 in U.S.* (April 18, 2025), available at https://www.nintendo.com/us/whatsnew/nintendo-maintains-nintendo-switch-2-pricing-retail-pre-orders-to-begin-april-24-in-u-s/?srsltid=AfmBOoqQd79WF1yzLmitJ4dITqSjqO8dOYIn918LyXEU2Lvoynyxh_cH (last visited April 13, 2026)

PLAINTIFFS' CLASS ACTION COMPLAINT - 7

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**D.      Nintendo's Statements Regarding Tariff Related Price Increases and Refunds**

40.      Nintendo publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices.

41.      In early April 2025, Nintendo delayed pre-orders for its hotly anticipated Nintendo Switch 2 "in order to assess the potential impact of tariffs and evolving market conditions."[13] Nintendo allowed pre-orders for the Nintendo Switch 2 in late April 2025, noting that the pricing for the Nintendo Switch 2 would remain the same as initially announced.[14] However, Nintendo also announced that "Nintendo Switch 2 accessories will experience price adjustments from those announced on April 2 due to changes in market conditions. Other adjustments to the price of any Nintendo product are also possible in the future depending on market conditions."[15]

42.      Nintendo raised the prices of the Nintendo Switch 2 accessories by approximately $1 to $10 depending on the product. For example, Nintendo raised the price of the Nintendo Switch 2 Pro Controller from $79.99 to $84.99 and the Nintendo Switch 2 Dock Set from $109.99 to $119.99.[16]

43.      In May 2025, Nintendo held a financial results briefing where it acknowledged the impact of the tariffs on the company's business.[17] When asked about the company's tariff assumptions, Nintendo's President, Shuntaro Furukawa, stated that "we have factored in a

---

[13] Kif Leswing, *Nintendo delays Switch 2 preorders because of Trump tariffs* (April 4, 2025), available at https://www.cnbc.com/2025/04/04/nintendo-delays-switch-2-pre-orders-because-of-trump-tariffs-.html (last visited April 13, 2026).
[14] Nintendo, *Nintendo Maintains Nintendo Switch 2 Pricing, Retail Pre-Orders to Begin April 24 in U.S.* (April 18, 2025), available at https://www.nintendo.com/us/whatsnew/nintendo-maintains-nintendo-switch-2-pricing-retail-pre-orders-to-begin-april-24-in-u-s/?srsltid=AfmBOoqQd79WF1yzLmitJ4dITqSjqO8dOYIn918LyXEU2Lvoynyxh_cH (last visited April 13, 2026)
[15] *Id.*
[16] Kyle Orland, *Nintendo raises planned Switch 2 accessory prices amid tariff "uncertainty"* (April 18, 2025), available at https://arstechnica.com/gaming/2025/04/nintendo-raises-planned-switch-2-accessory-prices-amid-tariff-uncertainty/ (last visited April 13, 2026).
[17] Nintendo Financial Results Briefing for Fiscal Year Ended March 2025 (May 8, 2025), available at https://www.nintendo.co.jp/ir/pdf/2025/250509e.pdf

PLAINTIFFS' CLASS ACTION COMPLAINT - 8

negative impact of several tens of billions of yen at the profit level into our consolidated financial forecast for the fiscal year ending March 2026."[18]

44.     During that same briefing, Furukawa also told investors that "[o]ur basic policy is that for any country or region, if tariffs are imposed, we recognize them as a part of the cost and incorporate them into the price."[19] And when asked about Nintendo's pricing strategy for its hardware, Furukawa explicitly acknowledged that "[h]ardware involves special factors such as tariffs."[20]

45.     Three months later, Nintendo announced more price increases: "Pricing for the original Nintendo Switch™ family of systems and products will change in the United States based on market conditions, effective August 3, 2025. These include Nintendo Switch – OLED Model, Nintendo Switch, Nintendo Switch Lite and select Nintendo Switch accessories. Other Nintendo products, including certain Nintendo Switch 2 accessories, select amiibo, and the Nintendo Sound Clock: Alarmo, will also see adjustments."[21]

46.     Nintendo's public statements and actions thus confirmed two critical points: first, that tariffs were increasing Nintendo's costs on imported goods; and second, that Nintendo was making pricing decisions in direct response to those tariff-driven cost increases.

47.     These public admissions are consistent with Nintendo's broader financial disclosures during the Class Period. Nintendo reported strong, and in some periods improving, financials while simultaneously acknowledging tariff pressures and raising prices on items affected by tariffs. Nintendo did not simply absorb the full cost of the unlawful tariffs; rather, Nintendo passed on at least part of those costs to consumers through higher retail prices.

[18] *Id.* at 3.
[19] *Id.* at 3.
[20] *Id.* at 5.
[21] Nintendo, *Nintendo Switch Pricing Update* (August 1, 2025), available at https://www.nintendo.com/us/whatsnew/nintendo-switch-pricing-update/?srsltid=AfmBOopWfo1VD4Z7iWK3U49uRfVgiNYRsUtDGQO5-yy2wOfZpVShJ1VR (last visited April 13, 2026).

PLAINTIFFS' CLASS ACTION COMPLAINT - 9

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

48.    Nintendo's own public statements and actions therefore establish a coherent timeline: Nintendo acknowledged tariff-driven cost increases and Nintendo selectively increased prices on affected goods during the tariff period.

49.    Plaintiffs and Class members paid tariff-inflated prices at Nintendo during the Class Period, while Nintendo now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**E.    Nintendo's Lawsuit Seeking Tariff Refunds**

50.    On March 6, 2026, Nintendo filed suit in the United States Court of International Trade challenging the legality of the tariffs imposed under IEEPA. Nintendo brought the action in its capacity as a U.S. importer that had paid duties under the challenged tariff regime.[22]

51.    In that action, Nintendo sought declaratory and injunctive relief invalidating the IEEPA tariffs and requested refunds of all duties collected from Nintendo under those tariff orders.[23]

52.    As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[24] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Nintendo—became eligible to pursue refunds of those duties.

53.    On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[25]

54.    The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an

---

[22] *See Nintendo of America Inc. v. United States*, No. 26-cv-1540 (Ct. Int'l Trade filed March 6, 2026).
[23] *Id.*
[24] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).
[25] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

PLAINTIFFS' CLASS ACTION COMPLAINT - 10

"unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[26]

55.     Nintendo is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid.

56.     Given Nintendo's scale as a major importer, Nintendo can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Nintendo previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Nintendo now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

57.     In practical terms, Nintendo stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

## CLASS ALLEGATIONS

58.     A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

59.     This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

60.     **Numerosity**: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the consumer base of Nintendo, the class numbers in the hundreds of thousands or millions of consumers.

---

[26] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.)

PLAINTIFFS' CLASS ACTION COMPLAINT - 11

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

61.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    a.  whether Nintendo paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

    b.  whether Nintendo increased retail prices on goods sold to consumers in response to those tariffs;

    c.  whether Nintendo passed through some or all of the tariff costs to consumers through higher prices;

    d.  whether Nintendo sought or will seek refunds of those tariffs from the federal government;

    e.  whether Nintendo's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

    f.  whether Nintendo's conduct was unfair under applicable consumer protection laws; and

    g.  the appropriate measure of restitution, damages, or other relief resulting from Nintendo's conduct.

62.     **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, bought products from Nintendo subject to tariff related price increases.

63.     The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

64.     **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those

PLAINTIFFS' CLASS ACTION COMPLAINT - 12

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

65.     **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

66.     The nature of this action and the nature of Washington laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

67.     The proposed class is described as follows:

All persons in the United States who purchased goods from Nintendo during the period February 1, 2025, through February 24, 2026, in which Nintendo raised prices.

PLAINTIFFS' CLASS ACTION COMPLAINT - 13

EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

68.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

69.     Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

70.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

71.     Excluded from the Class are:

a.     Defendant and any entities in which Defendant has a controlling interest;

b.     Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.     All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e.     Any attorneys representing the Plaintiffs or the Class.

///

///

///

PLAINTIFFS' CLASS ACTION COMPLAINT - 14

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

## CLAIMS FOR RELIEF
### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

72.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

73.    Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them in the form of price increases on goods during the period February 1, 2025, through February 24, 2026.

74.    Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

75.    Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the price increases obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

76.    Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

### COUNT II
### Money Had and Received
### (On behalf of Plaintiffs and the Class)

77.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

78.    Plaintiffs allege this claim individually and on behalf of the proposed class.

79.    Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

PLAINTIFFS' CLASS ACTION COMPLAINT - 15

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

80.     The money belonged to Plaintiffs and to each member of the proposed Class.

81.     Defendant has not returned the money.

82.     It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

83.     Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

**COUNT III**
**Violations of the Washington Consumer Protection Act, § RCW 19.86.010, *et seq*.**
**(On behalf of Plaintiffs and the Class)**

84.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

85.     Defendant is headquartered in Washington; its strategies, decision-making, and commercial transactions originate in Washington; most of its key operations and employees reside, work, and make company decisions (including pricing) in Washington; and Defendant and many of its employees are part of the people of the State of Washington. The conduct that Plaintiffs challenge directly affects the people of the State of Washington.

86.     Defendant advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by RCW § 19.86.010(2).

87.     Washington's Consumer Protection Act, RCW § 19.86.010, *et seq*. ("CPA"), protects consumers by promoting fair competition in commercial markets for goods and services.

88.     To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW § 19.86.020.

PLAINTIFFS' CLASS ACTION COMPLAINT - 16

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

89.    Nintendo engaged in unfair acts by: (i) raising prices due to tariffs; (ii) failing to disclose that it intended to seek tariff refunds; and (iii) retaining tariff refunds despite having passed the costs to its customers.

90.    Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant was engaged in the operation of its stores nationwide.

91.    Defendant has profited immensely from its unlawful conduct.

92.    As a result of Defendant's conduct, Plaintiffs and the Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

93.    As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

94.    Defendant's unfair acts have injured a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated as new tariffs are implemented.

95.    Defendant's unfair conduct proximately caused Plaintiffs' and the Class members' injury because, but for the challenged conduct, Plaintiffs and the Class members would not have paid price increases for goods subject to illegal tariffs that Nintendo seeks to recoup through refunds, and they did so as a direct, foreseeable, and planned consequence of that conduct.

96.    Plaintiffs, individually and on behalf of the Class, seek to enjoin further violation and recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

PLAINTIFFS' CLASS ACTION COMPLAINT - 17

## COUNT IV
### Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiffs and the Class)

97. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

98. Plaintiffs allege this claim individually and on behalf of the proposed Class.

99. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

100. Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

101. Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

102. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

    a. For an order certifying the proposed classes, appointing Plaintiff and his counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

    b. For damages suffered by Plaintiff and members of the proposed class;

    c. For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendant;

    d. For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

PLAINTIFFS' CLASS ACTION COMPLAINT - 18

e.  An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.  For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.  For Plaintiffs; costs incurred;

h.  For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.  For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 21st day or April, 2026.              Respectfully submitted,


By: /s/ M. Anderson Berry
    M. Anderson Berry, WSBA No. 63160

By: /s/ Timothy Emery
    Timothy Emery, WSBA No. 34078

By: /s/ Brook Garberding
    Brook Garberding, WSBA No. 37140

    Gregory Haroutunian*
    Brandon P. Jack*
    **EMERY REDDY, PC**
    600 Stewart Street, Suite 1100
    Seattle, WA 98101
    Phone: 916.823.6955
    *anderson@emeryreddy.com*
    *emeryt@emeryreddy.com*
    *brook@emeryreddy.com*
    *gregory@emeryreddy.com*
    *brandon@emeryreddy.com*

By: /s/ Jason T. Dennett
    Jason T. Dennett, WSBA No. 30686


PLAINTIFFS' CLASS ACTION COMPLAINT - 19

**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Terence R. Coates*
Dylan J. Gould*
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD**
**WOHLGELERNTER TANNER**
**WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications forthcoming

PLAINTIFFS' CLASS ACTION COMPLAINT - 20