HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY HOFFERT and PRASHANT SHARAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>NINTENDO OF AMERICA INC.,<br><br>    Defendant. | Case No. 2:26-cv-01360-RAJ<br><br>DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>NOTE ON MOTION CALENDAR:<br>August 17, 2026 |

DEFENDANT'S MOTION TO DISMISS - i
CASE NO. 2:26-cv-01360-RAJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.     IEEPA Tariffs and Resulting Litigation. ......................................................... 2

    II.    Nintendo's Response to the IEEPA Tariffs. ................................................... 3

    III.   Plaintiffs' Allegations. .................................................................................... 5

ARGUMENT ...................................................................................................................... 5

    I.     Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment. .................. 6

          A.    The doctrine of unjust enrichment does not apply when a party voluntarily pays a purchase price and receives a product in return.......................................................... 7

          B.    Plaintiffs' threadbare allegations that they conferred a "benefit" on Nintendo are inadequate. ....................................................................................................... 9

          C.    Plaintiffs do not plausibly allege that any enrichment was "unjust." ................... 10

    II.    Plaintiffs Fail to State a Claim for Money Had and Received....................... 11

    III.   Plaintiffs Fail to State a Claim Under the CPA. ........................................... 13

          A.    Plaintiffs do not plausibly allege that they suffered a substantial (or any) injury. 14

          B.    Nintendo's alleged conduct had countervailing benefits. .................................... 17

          C.    Plaintiffs' alleged injuries were reasonably avoidable. ....................................... 18

    IV.   Plaintiffs Fail to State a Viable Claim for Declaratory Relief. ...................... 19

CONCLUSION................................................................................................................... 19

DEFENDANT'S MOTION TO DISMISS - ii
CASE NO. 2:26-cv-01360

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alhadeff v. Meridian on Bainbridge Island, LLC,*
  167 Wash. 2d 601 (2009)........................................................................................12

*American Financial Services Ass'n v. FTC,*
  767 F.2d 957 (D.C. Cir. 1985)...............................................................................18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)..................................................................................................6

*Austin v. Ettl,*
  171 Wash. App. 82 (2012).......................................................................................10

*Bawazir v. Boeing Corp.,*
  No. 43375-101, 100 Wash. App. 1018, 2000 WL 349034 (Apr. 3, 2000) ..............7

*Bayley v. Lewis,*
  39 Wash. 2d 464 (1951)...........................................................................................12

*Behnke v. Ahrens,*
  172 Wash. App. 281 (2012).....................................................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................................5

*Bisson v. Bank of Am., N.A.,*
  919 F. Supp. 2d 1130 (W.D. Wash. 2013)..............................................................19

*Boeing Co. v. Sierracin Corp.,*
  108 Wash. 2d 38 (1987)...........................................................................................17

*City of Reno v. Netflix, Inc.,*
  52 F.4th 874 (9th Cir. 2022) ...................................................................................19

*Coast Trading Co., Inc. v. Parmac, Inc.,*
  21 Wash. App. 896 (1978).......................................................................................12

*Cox v. O'Brien,*
  150 Wash. App. 24 (2009)...........................................................................6, 9, 10, 11

*Dagher v. Saudi Refining, Inc.,*
  369 F.3d 1108 (9th Cir. 2004) .................................................................................17

*Daugherty v. Am. Honda Motor Co.,*
  144 Cal. App. 4th 824 (2006) ..................................................................................16

DEFENDANT'S MOTION TO DISMISS - iii
CASE NO. 2:26-cv-01360

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...................................................................................18

*Digital Mentor, Inc. v. Ovivo USA, LLC*,
   2018 WL 6724765 (W.D. Wash. Dec. 21, 2018) ..........................................................7

*Ehsani v. McCullough Family Partnership*,
   160 Wash. 2d 586 (2007)...........................................................................................11

*Erwin v. Cotter Health Centers*,
   161 Wash. 2d 676 (2007)..............................................................................................8

*Farwest Steel Corp. v. Mainline Metal Works, Inc.*,
   48 Wash. App. 719 (1987)......................................................................................9, 10

*Frame-Wilson v. Amazon.com, Inc.*,
   591 F. Supp. 3d 975 (W.D. Wash. 2022)......................................................................9

*Gerboc v. ContextLogic,Inc.*,
   867 F.3d 675 (6th Cir. 2017) ........................................................................................7

*Greenberg v. Amazon.com, Inc.*,
   3 Wash. 3d 434, 455–59 (2024)......................................................................13, 17, 18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash. 2d 778 (1986)......................................................................................13, 15

*Hawkinson v. Conniff*,
   53 Wash. 2d 454 (1959).................................................................................................7

*Kraft v. Spencer Tucker Sales, Inc.*,
   39 Wash. 2d 943 (1952)...............................................................................................12

*Langham-Hill Petroleum Inc. v. S. Fuels Co.*,
   813 F.2d 1327 (4th Cir. 1987) .....................................................................................11

*Lavington v. Hillier*,
   22 Wash. App. 2d 134, 143–44 (2022).........................................................................6

*Learning Resources, Inc. v. Trump*,
   607 U.S. 229 (2026)..................................................................................................1, 3

*Learning Resources, Inc. v. Trump*,
   784 F. Supp. 3d 209 (D.D.C. 2025), *stay granted*, No. 25-1428 (D.D.C. June
   3, 2025), ECF No. 41 .....................................................................................................3

*Maxwell v. Provident Mut. Life Ins. Co.*,
   180 Wash. 560 (1935)................................................................................................7, 8

*Money Mailer, LLC v. Brewer*,
   194 Wash. 2d 111 (2019)...............................................................................................9

DEFENDANT'S MOTION TO DISMISS - iv
CASE NO. 2:26-cv-01360

*Montes v. SPARC Group LLC*,
    6 Wash. 3d 321, 325 (2026).................................................................14, 15, 16

*N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
    799 F.2d 265 (7th Cir. 1986)...............................................................10

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
    161 Wash. App. 474 (2011)...............................................................6, 7

*Northwood Est., LLC v. Lennar Nw., Inc.*,
    12 Wash. App. 2d 1038 (2020).............................................................7

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ............................................................5

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,
    256 F.3d 879 (9th Cir. 2001) .........................................................10, 15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................4

*V.O.S. Selections, Inc. v. Trump*,
    No. 25-1812 (Fed. Cir. Feb. 27, 2026)................................................3

*V.O.S. Selections, Inc. v. United States*,
    772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), *stay granted*, 2025 WL 1649290
    (Fed. Cir. June 10, 2025) ..................................................................3

*V.O.S. Selections, Inc. v. United States*,
    No. 25-00066 (Ct. Int'l Trade June 4, 2026) ........................................3

**Statutes**

19 U.S.C. § 1484(a) .......................................................................11

19 U.S.C. § 1505(a) .......................................................................11

19 U.S.C. § 1508(a) .......................................................................11

15 U.S.C. § 45(n) .........................................................................13

RCW § 19.86.920 .........................................................................15

**Court Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................5

**Other Authorities**

19 CFR § 141.61(g)-(h) ....................................................................11

Restatement (Third) of Restitution & Unjust Enrichment § 6 (2011) .........................10

DEFENDANT'S MOTION TO DISMISS - v
CASE NO. 2:26-cv-01360

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**INTRODUCTION[1]**

In 2025, the President invoked the International Emergency Economic Powers Act ("IEEPA") to impose sweeping and constantly changing tariffs that reached products from nearly every US trading partner. Like many importers, Nintendo paid these tariffs to the United States so it could continue to sell its consoles, games, and accessories to consumers in the United States. Like many importers, Nintendo adjusted the prices of specific items to account for a panoply of economic factors, including but not limited to this market development. And like many importers, Nintendo has sought to recover the tariffs it paid in light of the Supreme Court's determination that those tariffs were unlawful. *See generally Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

Plaintiffs now claim that they are entitled to recover some or all of those refunds. Plaintiffs do not dispute that Nintendo's pricing adjustments were lawful. Nor do Plaintiffs allege that Nintendo breached any term of sale or misled consumers. To the contrary, Plaintiffs admit that Nintendo provided advance notice to the public that tariffs were among the market conditions that informed its pricing. *See* Compl. ¶¶ 40–45. Instead, Plaintiffs ask this Court to invent a legal duty out of whole cloth to retroactively re-price completed sales simply because the legal landscape has changed. Based on this made-up legal duty, Plaintiffs assert claims for unjust enrichment, money had and received, violations of the Washington Consumer Protection Act ("CPA"), and declaratory relief. Plaintiffs bring those claims on behalf of a putative class action of all US consumers who purchased goods with increased prices. Plaintiffs' theory is meritless, and this Court should dismiss their complaint.

The common thread among Plaintiffs' claims is that it is somehow "unfair" that Nintendo has not retroactively adjusted its prices for completed sales in response to the outcome of the tariff

---

[1] As set forth in Nintendo's contemporaneously filed motion to compel arbitration, Mr. Hoffert's claims belong in arbitration, not in court. Nintendo files this motion to dismiss as to Mr. Hoffert only in the event this Court denies its motion to compel arbitration. Nintendo does not waive, and specifically asserts, its rights under its arbitration agreements, including any appellate rights to have the proper forum resolved before Mr. Hoffert's claims proceed on the merits in court. Nintendo also expressly reserves the right to move to compel Mr. Sharan's claims to arbitration if discovery reveals his claims are arbitrable.

DEFENDANT'S MOTION TO DISMISS - 1
CASE NO. 2:26-cv-01360-RAJ

litigation. But that is not how commercial transactions work. Nintendo or one of its retailers set a price for each product, and consumers decided whether that price was worth paying. Those who bought Nintendo's products received exactly what they bargained and paid for: a console, game, and/or accessory at a price to which both parties agreed. The money Plaintiffs paid represents the purchase price of the goods they wanted and received; Plaintiffs are not entitled to a rebate simply because of intervening legal developments related to tariffs. No common-law doctrine or statute authorizes a departure from this basic commercial reality. Taken to its logical extension, Plaintiffs' theory would require every business that raises a price to recompute its prices and repay consumers if some pricing assumption proves mistaken, which could include not only invalidated tariff duties, but also any input cost that falls. That is not the law. In short, Plaintiffs have no legal entitlement to the tariff refunds Nintendo stands to receive.

This flaw is fatal not only to Plaintiffs' claim under the CPA, but also to their common-law claims for unjust enrichment and money had and received. These claims also fail for independent reasons as set forth below. And because Plaintiffs are not entitled to recover money from Nintendo, they are not entitled to the declaratory relief they seek either. This Court should dismiss Plaintiffs' lawsuit with prejudice.

## BACKGROUND

### I.    IEEPA Tariffs and Resulting Litigation.

In February 2025, the President issued a series of executive orders that imposed sweeping tariffs on imports from many countries, including many of the United States' key trading partners. *See* Compl. ¶¶ 2, 27–28. These tariffs required importers of record, such as Nintendo, to pay duties to U.S. Customs and Border Protection ("CBP") upon the entry of covered products to the United States. *See id.* ¶¶ 26, 30. Tariff rates and coverage seesawed throughout 2025 as the administration issued new executive orders and modified existing orders. *See id.* ¶¶ 27–28 & nn.4–5.

Some importers challenged the tariffs in the Court of International Trade ("CIT"). *See id.* ¶ 31. Although the CIT ruled in May 2025 that IEEPA did not authorize the tariffs, the Federal Circuit

DEFENDANT'S MOTION TO DISMISS - 2
CASE NO. 2:26-cv-01360

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

immediately stayed the ruling pending appeal, casting doubt on the challengers' likelihood of success. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), *stay granted*, 2025 WL 1649290 (Fed. Cir. June 10, 2025).  A similar injunction in the U.S. District Court for the District of Columbia was also stayed pending appeal.  *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *stay granted*, No. 25-1428 (D.D.C. June 3, 2025), ECF No. 41.  Thus, even as to the importers who were plaintiffs in those actions, the tariffs remained in effect as the cases wound through the courts.  Nintendo, like all other importers, continued to pay duties on covered merchandise under the then-operative executive orders.  *See* Compl. ¶ 30.

In February 2026, the Supreme Court held in *Learning Resources* that IEEPA did not authorize the executive orders imposing the tariffs.  *See* Compl. ¶¶ 4, 32.  Even after the Supreme Court's ruling, both the timing and the extent of the government's compliance remained in doubt.  The government opposed a motion for immediate issuance of the Federal Circuit mandate, proposing that "the Court should withhold issuance of the mandate for 90 days to allow the political branches an opportunity to consider options" and pointing to a prior case in which "refunds took seven years to fully be provided."  ECF No. 171, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, at 2–3 (Fed. Cir. Feb. 27, 2026).  After the Federal Circuit immediately issued the mandate over the government's objection, the government continued fighting in the CIT and asserted that it would be unable to comply with an immediate refund order.  *See* ECF No. 98, *V.O.S. Selections, Inc. v. United States*, No. 25-00066 (Ct. Int'l Trade June 4, 2026).  Although the government has initiated a refund process that allows certain importers to obtain refunds, litigation over the government's refund obligations remains ongoing.

## II.    Nintendo's Response to the IEEPA Tariffs.

Nintendo[2] markets and distributes electronic video game consoles, games, and accessories, including the Nintendo Switch and Nintendo Switch 2.  *See* Compl. ¶ 20.  Nintendo also makes and releases award-winning and beloved video games that can be played only on Nintendo consoles.  *See*

---

[2] Defendant Nintendo of America Inc. is a wholly-owned subsidiary of Nintendo Co., Ltd.  Nintendo of America Inc. and Nintendo Co., Ltd. are together referred to herein as "Nintendo."

DEFENDANT'S MOTION TO DISMISS - 3
CASE NO. 2:26-cv-01360

*id.* These games are highly anticipated each year and include such well-known franchises as *Super Mario* and *The Legend of Zelda*. Untold millions of consumers in the United States and around the world have played and enjoyed Nintendo games and consoles. Nintendo sells its games and hardware not only through retail stores, but also through direct-to-consumer sales.

Nintendo is one of thousands of importers who were subject to, and complied with, the tariff obligations that the President imposed under IEEPA. *See id.* ¶¶ 26, 30, 37. Like its market peers, Nintendo made the difficult decision to adjust some of its prices in response to market conditions including costs of memory, labor, shipping, and tariffs. Unlike many of its market peers, however, Nintendo did not simply increase each product's price by the amount of tariffs it paid on that product or impose an across-the-board tariff surcharge. Instead, Nintendo imposed modest and selective price adjustments, and it chose to bear the costs of tariffs on some of its most popular products of 2025, including its flagship console, the Nintendo Switch 2. *See id.* ¶¶ 41–45. As Plaintiffs admit, Nintendo also "publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices." *Id.* ¶ 40; *see also id.* ¶¶ 41–45 (discussing Nintendo press releases).[3]

In March 2026, shortly after the Supreme Court invalidated the IEEPA tariffs, Nintendo filed suit in the Court of International Trade to recover the duties it paid. *See* Compl. ¶¶ 50–51 (citing *Nintendo of Am. Inc. v. United States*, No. 26-cv-1540 (Ct. Int'l Trade filed Mar. 6, 2026)).

---

[3] *See, e.g.*, Compl. ¶ 41 n.13 (citing Nintendo, *Nintendo Maintains Nintendo Switch 2 Pricing, Retail Pre-Orders to Begin April 24 in U.S.* (Apr. 18, 2025), https://www.nintendo.com/us/whatsnew/nintendo-maintains-nintendo-switch-2-pricing-retail-pre-orders-to-begin-april-24-in-u-s/); *id.* ¶ 43 n.17 (citing *Nintendo Financial Results Briefing for Fiscal Year Ended March 2025* (May 8, 2025), https://www.nintendo.co.jp/ir/pdf/2025/250509e.pdf); *id.* ¶ 45 n.21 (citing Nintendo, *Nintendo Switch Pricing Update* (Aug. 1, 2025), https://www.nintendo.com/us/whatsnew/nintendo-switch-pricingupdate/). Because Plaintiffs cite those press releases in the complaint and rely on them as the basis for their claims, this Court may consider those press releases under the incorporation-by-reference doctrine. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

DEFENDANT'S MOTION TO DISMISS - 4
CASE NO. 2:26-cv-01360

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**III.    Plaintiffs' Allegations.**

Plaintiffs allege that they "purchased goods from Nintendo that were imported from countries subject to the IEEPA tariffs." Compl. ¶¶ 18–19.  Neither Plaintiff specifies which Nintendo products he purchased, where he bought those products, or how much he paid for those products, even though each acknowledges that Nintendo did not raise prices on all of its products. *See id.* ¶¶ 41–45.  Rather, Plaintiffs both allege in conclusory fashion that they "paid retail prices for those goods that were increased by Nintendo to account for the tariffs." *Id.* ¶¶ 18–19.  Plaintiffs allege that they "would not have paid those higher prices absent the unlawful tariffs and Nintendo's pass-through of those tariffs to consumers." *Id.*  Because Nintendo allegedly "collected the tariff costs from consumers through elevated pricing" and stands to receive a refund for those tariffs, Plaintiffs allege that Nintendo will obtain "windfall profits" unless it is forced to "return tariff-related overcharges to the consumers who actually paid them." *Id.* ¶¶ 1, 7, 9.

Based on this theory, Plaintiffs assert claims against Nintendo for unjust enrichment (Count I), money had and received (Count II), violations of the CPA (Count III), and declaratory relief (Count IV). *See id.* ¶¶ 72–102.  Plaintiffs assert these claims on behalf of a putative class of "[a]ll persons in the United States who purchased goods from Nintendo during the period February 1, 2025 through February 24, 2026, in which Nintendo raised prices." *Id.* ¶ 67.

## ARGUMENT

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).[4]  To withstand a motion to dismiss, a complaint must offer "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

---

[4] Unless noted, all citations and internal quotation marks are omitted from case citations.

DEFENDANT'S MOTION TO DISMISS - 5
CASE NO. 2:26-cv-01360

U.S. 662, 678 (2009). Courts are not required to accept a "legal conclusion couched as a factual allegation." *Id.*

Although Plaintiffs assert four separate causes of action, all four claims hinge on the theory that Plaintiffs are entitled to rebates from Nintendo to offset the amounts they allegedly overpaid because of the IEEPA tariffs. As explained below, this Court should dismiss Plaintiffs' claims with prejudice because Plaintiffs have no legal entitlement to any such rebate.

## I.      Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment.

The doctrine of unjust enrichment entitles a plaintiff to restitution for "the value of the benefit" only where "notions of fairness and justice require it." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 490 (2011) (quoting *Young v. Young*, 164 Wash. 2d 477, 484 (2008)); *see Lavington v. Hillier*, 22 Wash. App. 2d 134, 143–44 (2022) (noting that unjust enrichment "allows a plaintiff to recover for the value of a benefit the defendant retained even though there is no formal contractual relationship, based on equity and fairness"). To establish unjust enrichment, a plaintiff must show: (1) the plaintiff "conferred a benefit" on the defendant; (2) the defendant had "knowledge of that benefit"; and (3) the defendant must have "accept[ed] or retain[ed] the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value"—*i.e.*, that any enrichment was "unjust." *Cox v. O'Brien*, 150 Wash. App. 24, 37 (2009).

Here, Plaintiffs' claim for unjust enrichment independently fails both because it is displaced by Plaintiffs' voluntary payment for Nintendo's products and because it is inadequately pleaded. Plaintiffs received exactly what they paid for: Nintendo products that Plaintiffs knowingly and voluntarily purchased at the advertised price. Nor is there anything "unjust" about Nintendo retaining money that it may receive from the government as tariff refunds. The fact that Nintendo stands to receive tariff refunds does not give Plaintiffs any legal entitlement to those funds.

DEFENDANT'S MOTION TO DISMISS - 6
CASE NO. 2:26-cv-01360

### A.    The doctrine of unjust enrichment does not apply when a party voluntarily pays a purchase price and receives a product in return.

Unjust enrichment is an equitable remedy designed to address situations where no contract governs the parties' relationship. *See Norcon Builders*, 161 Wash. App. at 490.  Accordingly, unjust enrichment claims are barred when a contract governs the relationship between the parties.  *See id* at 484–85; *Digital Mentor, Inc. v. Ovivo USA, LLC*, 2018 WL 6724765 at *12–13 (W.D. Wash. Dec. 21, 2018) ("[N]o action for unjust enrichment lies where a contract governs the parties' relationship to each other.").  This makes sense.  Unjust enrichment is a gap-filling doctrine; where there is no contract governing the parties' relationship, it supplies a remedy to prevent one party from retaining a benefit the law cannot otherwise reach. *Northwood Est., LLC v. Lennar Nw., Inc.*, 12 Wash. App. 2d 1038, at *8 (2020).  Unjust enrichment is not an equitable roving commission to police the fairness of bargains the parties freely struck.

The mere fact that Plaintiffs voluntarily paid for a product and received that product in return precludes applying the unjust enrichment doctrine.  Money "voluntarily paid under a claim of right to the payment, and with knowledge of the facts" cannot be recovered under a theory of restitution. *Hawkinson v. Conniff*, 53 Wash. 2d 454, 458 (1959); *accord Maxwell v. Provident Mut. Life Ins. Co.*, 180 Wash. 560, 567 (1935).  Here, Plaintiffs had "full knowledge" of the facts underpinning the transaction at the point of sale: namely, the product and the advertised price.  And to the extent Plaintiffs maintain that "full knowledge" requires knowledge of all of the specific inputs that drive the price of Nintendo's products (it does not), Nintendo proactively communicated that tariffs were among the levers informing its pricing strategy. *See* Compl. ¶¶ 40–48.  Plaintiffs decided that the Nintendo products they purchased were worth the price they paid, including any tariff-related price increases.  Their voluntary choice to exchange money for Nintendo's products means that Nintendo was not "unjustly enriched." *See, e.g.*, *Bawazir v. Boeing Corp.*, 100 Wash. App. 1018, at *7 (Apr. 3, 2000) (affirming dismissal of unjust enrichment claim when payment was in exchange for services rendered); *see also Gerboc v. ContextLogic,Inc.*, 867 F.3d 675, 679 (6th Cir. 2017) (finding that seller "was not *unjustly* enriched" because the plaintiff "got what he paid for").

DEFENDANT'S MOTION TO DISMISS - 7
CASE NO. 2:26-cv-01360

Plaintiffs also claim that Nintendo unjustly profited as a result of "unlawful" tariffs. Compl. ¶¶ 1, 7-8, 75. But the tariffs were not "unlawful" at the time Nintendo paid them. Nintendo was required by law to pay them; the Supreme Court did not invalidate the tariffs until well after Plaintiffs had purchased their products. *See id.* ¶¶ 4, 26, 30, 32, 67. The unjust enrichment doctrine does not allow Plaintiffs to use these new facts to retroactively convert a fair transaction at the applicable time into an unfair one, or to re-price the completed sale.

A completed sale is meant to be final. The buyer acquires the goods, the seller receives the money paid, and both can rely on the transaction not being reopened. Plaintiffs' theory removes that finality. Under their theory, no purchase is ever truly complete, because any buyer could come back months or years later to demand that a sales price be recalculated whenever an input cost is invalidated or a pricing assumption turns out to be wrong. Contract law—including that which governs ordinary commercial transactions—exists to provide parties certainty. *See Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 700 (2007) ("The [p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy . . . their rights and liabilities under the contract." (alteration in original)). Plaintiffs' rule would undo that certainty. Courts do not and should not reopen completed, voluntary sales based on hindsight. *Cf., e.g., Maxwell*, 180 Wash. at 567 (noting that parties are not entitled to restitution of voluntary payments absent inequitable circumstances).

Plaintiffs' approach would also lead to serious administrability problems. Even confined to this case, Plaintiffs' theory would require the Court to take each of Nintendo's products and determine how much of its price was attributable to the tariff, separating that duty from the many other inputs that move a price. That allocation is difficult enough product by product within a single company. But Plaintiffs' theory would not be limited to Nintendo. If recovering an unlawful duty obligates a seller to rebate part of every sale, the same allocation must be performed for every product sold by every business that raised prices during the tariff period. This Court is not a pricing commissar, and it should reject a legal rule that would require it to become one.

DEFENDANT'S MOTION TO DISMISS - 8
CASE NO. 2:26-cv-01360

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

**B.    Plaintiffs' threadbare allegations that they conferred a "benefit" on Nintendo are inadequate.**

As explained above, Plaintiffs' theory of unjust enrichment is fundamentally flawed. But even setting aside those flaws, Plaintiffs' allegations are too threadbare to state a claim.

To state an unjust enrichment claim, Plaintiffs must allege (among other things) that they conferred a benefit upon the defendant. *See Cox*, 150 Wash. App. at 37. But Plaintiffs do not identify which Nintendo product(s) they purchased, as would be necessary to substantiate their claim that they conferred a benefit on Nintendo by paying "retail prices for those goods that were increased by Nintendo to account for the tariffs." Compl. ¶¶ 18–19. And, given Plaintiffs' own acknowledgment that Nintendo only raised prices on *some* products to account for the cost of tariffs, *see id.* ¶¶ 41, 67, Plaintiffs' opaque pleading does not adequately allege that any portion of the purchase price they paid was attributable to tariffs, as would be necessary to establish that Plaintiffs conferred a benefit upon Nintendo. *See, e.g.*, *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 995 (W.D. Wash. 2022) (dismissing unjust enrichment claim when the plaintiffs "allege[d] no facts consistent with the claim that they conferred a benefit to Amazon").

Nor do Plaintiffs identify the sellers from whom they purchased Nintendo products. While Nintendo sells some products directly to consumers, it also sells many products through third-party retailers. If Plaintiffs purchased products from a third-party retailer, they could not state an unjust enrichment claim as to Nintendo. Plaintiffs would have paid—and hence purportedly "enriched"— the retailer, not Nintendo. The retailer, not Plaintiffs, would have been the entity that paid Nintendo. *See Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash. App. 719, 732–33 (1987) (holding that the defendant "must be more than a mere incidental beneficiary of the transaction" to state a claim for unjust enrichment). Moreover, retailers set the prices within their own stores, which typically differ from the wholesale price the retailers paid Nintendo. *See, e.g.*, *Money Mailer, LLC v. Brewer*, 194 Wash. 2d 111, 124 (2019) (recognizing that "prices are raised between differing levels of distribution frequently," such as between wholesalers, retailers, and suppliers). The purchase price Plaintiffs paid may well have been entirely disconnected from whatever component

DEFENDANT'S MOTION TO DISMISS - 9
CASE NO. 2:26-cv-01360

of the wholesale price was attributable to tariffs.  Because the complaint is silent on these basic issues, it does not state a claim.

### C.     Plaintiffs do not plausibly allege that any enrichment was "unjust."

Enrichment is unjust only when "under the circumstances and as between the two parties to the transaction" it is "inequitable for the receiving party to retain the benefit without paying its value." *Cox*, 150 Wash. App. at 37.  In other words, "[e]nrichment alone will not suffice to invoke the remedial powers of a court of equity.  It is critical that the enrichment be unjust both under the circumstances and as between the two parties to the transaction." *Farwest Steel Corp.*, 48 Wash. App. at 732.

Here, there was nothing "inequitable" or "unjust" about Nintendo incorporating, genuine, disclosed, government-imposed cost increases into its pricing decisions in arms'-length transactions. "Price increases are a common business practice to pass on higher costs." *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001).  The fact that the challengers ultimately prevailed in the tariff litigation does not retroactively render Plaintiffs' transactions "unjust."  Indeed, it is black-letter law that a party is not entitled to restitution simply "because a divergence between expectation and realization is later revealed."  Restatement (Third) of Restitution & Unjust Enrichment § 6, cmt. d (2011); *see also Austin v. Ettl*, 171 Wash. App. 82, 92 (2012) (affirming dismissal of unjust enrichment claim premised on the defendants' failure to "disclose the potential costs of the not-yet-extant" encumbrances on the plaintiff's property).

To the extent the specter of tariff litigation is even relevant to the justness of an ordinary commercial transaction (it is not), it was well-known to the public that there was pending litigation challenging the tariffs, and that there was a risk that the government would win.  Like any rational seller confronting an uncertain future, Nintendo assessed that risk, among others, in Nintendo's adjustments of the prices of certain products—just as it would to account for the risks of supply-chain disruptions, currency movements, or shifting regulations.  That is how courts have repeatedly held that fixed-price contracts, including contracts for the sale of consumer goods, work.  *See N. Ind.*

DEFENDANT'S MOTION TO DISMISS - 10
CASE NO. 2:26-cv-01360

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

*Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986) ("The normal risk of a fixed-price contract is that the market price will change."). The fact that the risk later broke one way rather than the other does not entitle Plaintiffs to reprice the transaction after the fact. Indeed, if transactions could be repriced under those circumstances, "then the entire purpose of fixed-price contracts . . . is defeated." *Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330 (4th Cir. 1987).

Moreover, it is not "inequitable" for Nintendo to retain the benefit of the tariff refunds because Nintendo—and not its consumers—bore the primary brunt of the tariffs. *Cox*, 150 Wash. App. at 37. As the importer of record, Nintendo had to remit the tariffs upfront, in full, long before any of the goods reached a customer. *See* 19 U.S.C. § 1505(a). It had to classify its entries, calculate the duties owed, file the required entry summaries, and maintain the supporting records, without any assurance that the payments would ever be returned. *See* 19 U.S.C. § 1484(a); 19 CFR § 141.61(g)-(h); 19 U.S.C. § 1508(a). And when the tariffs were struck down, Nintendo did not automatically receive its money back. It filed its own lawsuit and is pursuing recovery through the government's administrative process. Compl. ¶¶ 50–51 (citing *Nintendo of Am. Inc. v. United States*, No. 26-cv-1540 (Ct. Int'l Trade filed Mar. 6, 2026)). Nintendo bore the cost, carried it on its own books, shouldered the administrative burden of compliance, absorbed the risk that the litigation would come out the other way, and then had to fight (and expend attorneys' fees) to get its money back. Nintendo's ultimate recovery of the funds is the opposite of the kind of unearned benefit the unjust enrichment doctrine exists to strip away.

## II.     Plaintiffs Fail to State a Claim for Money Had and Received.

Plaintiffs' "money had and received" claim rests on the same theory as their unjust enrichment claim, and it fails for the same reasons. To succeed on the equitable claim of "money had and received," a plaintiff must demonstrate that the defendant received money "in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Ehsani v. McCullough Family Partnership*, 160 Wash. 2d 586, 592 (2007). This cause

DEFENDANT'S MOTION TO DISMISS - 11
CASE NO. 2:26-cv-01360

of action is founded on the same principles as unjust enrichment. *See Coast Trading Co., Inc. v. Parmac, Inc.*, 21 Wash. App. 896, 902–03 (1978). It is a narrow cause of action that exists to rectify situations in which the defendant holds a "specific fund" that recognized equitable principles would still treat as the plaintiff's—for instance, money obtained by mistake, coercion, fraud, or failure of consideration. *Coast Trading Co,.* 21 Wash. App. at 903; *accord Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601, 618–19 (2009).

Plaintiffs allege no inequitable circumstances here. Instead, Plaintiffs once again rely on the claim that the tariffs, which Nintendo accounted for in its overall pricing strategy, were later declared unlawful. *See* Compl. ¶¶ 77–83. But this is not a "mistake" that gives rise to a claim for money had and received. Plaintiffs knew the price of Nintendo's goods when they paid for them, and they chose to pay that price. Plaintiffs do not allege otherwise, and a subsequent change in the law is not a mistake of fact that renders a completed payment recoverable. Nor do Plaintiffs allege fraud, coercion, or any other recognized inequitable circumstance. Nintendo receiving potential refunds does not offend equity and good conscience. As explained above, the possibility that cost inputs may change—with the seller retaining either the upside or the downside—is inherent to any fixed price transaction. Because Plaintiffs "identif[y] no such principle upon which [their] claim for money had and received is based," the claim fails. *Alhadeff*, 167 Wash. 2d at 618.

Nor is this a case in which Nintendo received money "for which no consideration had been given." *Kraft v. Spencer Tucker Sales, Inc.*, 39 Wash. 2d 943, 950 (1952). Plaintiffs paid a unitary purchase price for Nintendo products and received the products in return. *See* Compl. ¶¶ 18–19. Although Plaintiffs allege that Nintendo received money "in the form of a tariff surcharge," *id.* ¶ 79, Plaintiffs themselves acknowledge that Nintendo's pricing decisions did not include any direct pass-through of tariff costs to consumers. *See id*. ¶¶ 41–45. And for that unitary price, Plaintiffs received the benefit of their bargain: the Nintendo products Plaintiffs wished to purchase at the price they agreed to pay. This is not the sort of "complete failure of consideration" that supports a claim for money had and received. *Bayley v. Lewis*, 39 Wash. 2d 464, 470 (1951).

DEFENDANT'S MOTION TO DISMISS - 12
CASE NO. 2:26-cv-01360

### III.    Plaintiffs Fail to State a Claim Under the CPA.

To state a claim under the CPA, Plaintiffs must allege (among other things) that Nintendo engaged in an "unfair or deceptive act or practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Plaintiffs cannot state a claim under the CPA because they have not plausibly alleged that Nintendo's conduct was either "unfair" or "deceptive."

Plaintiffs allege that Nintendo committed three purportedly "unfair" acts in violation of the CPA: "(i) raising prices due to tariffs; (ii) failing to disclose that it intended to seek tariff refunds; and (iii) retaining tariff refunds despite having passed the costs to its customers." Compl. ¶ 89. To determine whether this alleged conduct is "unfair," the Washington Supreme Court has adopted the "substantial injury" test from the Federal Trade Commission Act, 15 U.S.C. § 45(n). *See generally Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 455–59 (2024).

This "substantial injury" standard requires that the defendant's conduct resulted in consumer injury that is "substantial," "not outweighed by any countervailing benefits to consumers or competition that the practice produces," and "an injury that consumers themselves could not have reasonably avoided." *Id.* at 456.[5] But Plaintiffs cannot satisfy any of these elements. Plaintiffs experienced no injury (let alone a "substantial" one); Nintendo's practices have countervailing benefits to both consumers and competition; and their alleged injuries were reasonably avoidable.

---

[5] In *Greenberg*, the Washington Supreme Court noted that there may be "ways that a plaintiff can show that act or practice that is unregulated by statute is unfair," even if he or she cannot satisfy the "substantial injury" test. 3 Wash. 3d at 459. But that comment is dicta, as the *Greenberg* court ultimately concluded that the plaintiff's allegations established a "substantial injury." *See id.* In any event, Plaintiffs do not allege that Nintendo's conduct is unfair based on some other test. To the contrary, Plaintiffs tether their claims of unfair conduct to the "substantial injury" test. *See* Compl. ¶ 92 ("As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.").

DEFENDANT'S MOTION TO DISMISS - 13
CASE NO. 2:26-cv-01360

**A. Plaintiffs do not plausibly allege that they suffered a substantial (or any) injury.**

Plaintiffs have not plausibly alleged that Nintendo's conduct resulted in any injury—much less a substantial one. The Washington Supreme Court has made clear that a plaintiff does not suffer injury as a result of purchasing a product unless the product was "objectively different from or worth less than the purchase price." *Montes v. SPARC Grp.*, 6 Wash. 3d 321, 325 (2026). And it has also recognized that "the market determines the fair market value" of a product. *Id.* at 334. Plaintiffs do not claim that the products they purchased from Nintendo were defective, that they were not as advertised, or that they were somehow worth less than Plaintiffs paid for them. Instead, Plaintiffs allege only that they "would not have paid . . . higher prices absent the unlawful tariffs and Nintendo's pass-through of those tariffs to consumers." Compl. ¶¶ 18–19. But Plaintiffs' allegations that they paid "higher prices" due to the tariffs does not mean that they suffered a substantial (or any) injury.

*Montes* illustrates the flaw in Plaintiffs' theory of injury. There, the plaintiff alleged that she suffered injury because she purchased leggings for $6 based on the defendant's representation that the leggings previously sold for $12.50, even though they "rarely sold for $12.50." 6 Wash. 3d at 324. The Washington Supreme Court found that the plaintiff's allegations did not establish a cognizable injury because they did not show that "the product she received was objectively different from or less valuable than what was advertised." *Id.* at 325. Absent any allegation that "the leggings she received differed in any material, objective way from the leggings advertised" or that "the leggings were worth less than the $6 she paid for them," the court found that the plaintiff suffered no injury because she "received and retained the leggings she wanted at the price she agreed to pay." *Id.*

In reaching that conclusion, the Washington Supreme Court also rejected the plaintiff's claim that she "was injured nonetheless because she would not have paid at all except for the false advertising scheme." *Id.* at 333. "In a retail transaction," the court explained, "the consumer gives the seller money and, in exchange, receives a product or service." *Id.* Even though "the consumer's

DEFENDANT'S MOTION TO DISMISS - 14
CASE NO. 2:26-cv-01360

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

money is 'diminished' when they hand it over," that consumer "receives something of value" in exchange for her money. *Id.* "Without more," the court concluded," "the mere fact of a retail transaction does not imply economic loss." *Id.* And while the plaintiff alleged that she was injured because "the leggings' falsified price history made those leggings materially different from and less valuable than the leggings she wanted," the court found that this "claimed injury is more accurately characterized as dashed expectations" and was not cognizable under the CPA. *Id.* at 333–34.

That reasoning applies with equal force here. Plaintiffs allege that it was "unfair" for Nintendo to "rais[e] prices due to tariffs." Compl. ¶ 89. But even if Plaintiffs subjectively believe that the prices they paid were "unfair," that does not amount to a substantial injury—particularly because those prices reflected actual cost inputs at the time Plaintiffs made their alleged purchases. Incorporating potential cost increases is an inevitable reality for businesses faced with the shifting regulatory and cost landscapes that importers like Nintendo face constantly, including in 2025. *See Table Bluff*, 256 F.3d at 885 ("Price increases are a common business practice to pass on higher costs."); RCW § 19.86.920 (stating that the CPA "shall not be construed to prohibit acts or practices that are reasonable in relation to the development and preservation of business"). And regardless of *why* Nintendo increased its prices, there is nothing "unfair" about buying a product at its advertised price unless it is "objectively different from or less valuable than what was advertised." *Montes*, 6 Wash. 3d at 325.[6]

Plaintiffs also fault Nintendo for "failing to disclose that it would seek tariff refunds" at the time of their purchases. Compl. ¶ 89.[7] But that does not establish a substantial injury either. Even

---

[6] *Montes* addressed whether the plaintiff had alleged a cognizable injury as part of its analysis of whether the plaintiff had satisfied the CPA's requirement of alleging an "injury to business or property." *See Montes*, 6 Wash. 3d at 324–337; *see also Hangman Ridge*, 105 Wash. 2d at 780 (noting that a CPA claim requires "injury to plaintiff in his or her business or property"). But its analysis is equally applicable in determining whether Plaintiffs have plausibly alleged a "substantial injury," as they must to state a claim of unfair conduct under the CPA. After all, if Plaintiffs cannot plausibly allege that they suffered an injury, they cannot establish that any such injury is "substantial."

[7] Plaintiffs do not assert in their complaint that Nintendo's failure to disclose that it would seek tariff refunds constitutes "deceptive" conduct under the CPA. Nonetheless, Plaintiffs have not even attempted to allege, and have not plausibly alleged, that Nintendo's failure to disclose that it would

DEFENDANT'S MOTION TO DISMISS - 15
CASE NO. 2:26-cv-01360

if Nintendo could have predicted that the Supreme Court would invalidate the tariffs and mapped out a post-litigation strategy in advance of Plaintiffs' purchases (it could not), it would not have been "unfair" for Nintendo to decline to disclose any such future litigation strategy.  Forcing businesses to broadcast their litigation strategy would not inform consumers so much as feed them speculation, while discouraging companies from contesting unlawful charges in the first place.  The law sensibly leaves litigation strategy where it belongs: confidential and in the hands of the party deciding whether to litigate.  The CPA does not impose a duty to share legal strategy with consumers at point of sale, and this Court should not invent one.

In any event, Plaintiffs do not explain how the failure to disclose this legal strategy resulted in any concrete injury, as the CPA requires.  *See Montes*, 6 Wash. 3d at 324.  Plaintiffs' purchases would have cost exactly the same whether or not Nintendo disclosed its purported contingent plans to seek refunds if the tariffs were invalidated.  Plaintiffs also make no allegations about what they would have done with this information had they received it.

Finally, Plaintiffs allege that they suffered a "substantial injury" because Nintendo "retain[ed] tariff refunds despite having passed the costs on to its consumers."  Compl. ¶ 89.  But as Plaintiffs expressly recognize in their complaint, Nintendo did *not* pass on the costs of all tariffs to its consumers; rather, Nintendo imposed modest price adjustments on certain products, and bore the costs of tariffs on others, including its flagship console, the Nintendo Switch 2.  *See id.* ¶¶ 41–45.  Moreover, Nintendo's pricing strategy is not based on tariffs alone; market conditions including the costs of memory, labor, and shipping all play a substantial role in Nintendo's pricing.  In any event, even if Plaintiffs could show that the tariffs Nintendo paid were perfectly offset by product price increases (they were not), Plaintiffs still did not suffer a substantial injury as a result of not receiving a rebate that Nintendo never promised months after a completed transaction.  Plaintiffs do not dispute

seek tariff refunds was "likely to mislead a reasonable or ordinary consumer."  *Behnke v. Ahrens*, 172 Wash. App. 281, 293 (2012).  Nor could they, as it is axiomatic that "a failure to disclose a fact that one has no affirmative duty to disclose" is not "likely to deceive anyone."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006).

DEFENDANT'S MOTION TO DISMISS - 16
CASE NO. 2:26-cv-01360

that Nintendo paid tariffs. As the importer of record, Nintendo has a legal entitlement to recover those tariffs. Declining to distribute that money to consumers who have no legal claim to that money does not deprive Plaintiffs of anything they held or were entitled to hold. Plaintiffs remain in the same position they bargained for and the same position they would occupy had the Supreme Court upheld the tariffs.

### B.    Nintendo's alleged conduct had countervailing benefits.

Leaving aside their failure to make out a substantial injury, Plaintiffs cannot state a claim of "unfair" conduct because Nintendo's conduct had "countervailing benefits to consumers and competition." *Greenberg*, 3 Wash. 3d at 456. Consumers and competition benefit when businesses have the flexibility to adjust prices (up or down) in response to changing cost inputs. *See id.* at 486–87 (Keenan, J., concurring). Pricing to reflect cost changes keeps products on shelves and businesses solvent; the alternative is shortages or withdrawal from the market. The benefits to consumers and competition from allowing sellers to price rationally in response to costs outweigh any claimed harm from the adjusted market price. *See Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 54 (1987) (holding that conduct "motivated by legitimate business concerns" is not unfair under the CPA).

A rule that prices are final once a sale closes gives every business a stable foundation on which to plan. *Cf. Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108, 1127 (9th Cir. 2004) (Fernandez, J., concurring in part and dissenting in part) ("What could be more integral to the running of a business than setting a price for its goods and services?"). A company must be able to set prices and make investment decisions in reliance on the revenue it has actually earned, rather than holding capital in reserve against the possibility that some past cost input will later be undone and converted into a liability. Certainty of this kind benefits consumers as much as sellers because it allows businesses to price more confidently and competitively in the first place. The alternative—exposing every seller to contingent liability whenever a cost it once absorbed is later reduced or invalidated—would inject random, unbudgetable risk that makes rational pricing and planning impossible.

DEFENDANT'S MOTION TO DISMISS - 17
CASE NO. 2:26-cv-01360

### C.   Plaintiffs' alleged injuries were reasonably avoidable.

Finally, Plaintiffs cannot state a claim under the CPA because their alleged injuries were reasonably avoidable. *See Greenberg*, 3 Wash. 3d at 456. Nintendo announced well before the price adjustments took effect that changing market conditions were driving price changes. *See* Compl. ¶¶ 40–45; *supra* note 3. Consumers who thought the prices were too high, or who preferred to await the outcome of the well-publicized tariff litigation, "had a free and informed choice" as to whether to buy Nintendo's products at that time. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

*Taylor v. Amazon.com, Inc.* is instructive. 2025 WL 104381 (W.D. Wash. Jan. 15, 2025). There, the plaintiffs alleged that Amazon violated the CPA by using a "buy box" to display prices for products from specific sellers in a way that falsely suggested that the highlighted price was the "lowest-price offer for that item with equal or better shipping times," even "when a lower offer is available from an FBA [Fulfilled By Amazon] seller with identical delivery and delivery reliability." *Id.* at *2. Judge Pechman dismissed this claim and found that "consumers can reasonably avoid the alleged harm by comparing the Buy Box offer with those relegated to the Other Sellers box." *Id.* at *6. As Judge Pechman explained, "consumers have a free and informed choice to review the offers for a particular product," and they "have the means to avoid the harm by selecting a different offer or not purchas[ing] the product at all." *Id.* This defect, Judge Pechman concluded, was "fatal to Plaintiffs' unfairness claim" under the CPA. *Id.*

The same is true here. This is not a case involving necessities that a consumer has "no meaningful choice" to avoid buying. *Greenberg*, 3 Wash. 3d at 462 (finding that the plaintiffs plausibly alleged that Amazon violated the CPA by engaging in "price gouging" during the COVID-19 pandemic because, "given product scarcity and their respective local government's desires to shelter in place during the pandemic, they had no meaningful choice but to purchase their products from Amazon"). Nor is it a case involving highly restricted markets where consumers cannot seek alternatives. *See, e.g.*, *Am. Financial Servs. Ass'n v. FTC*, 767 F.2d 957, 976 (D.C. Cir. 1985).

DEFENDANT'S MOTION TO DISMISS - 18
CASE NO. 2:26-cv-01360

Instead, this case involves video game consoles and accessories, which are discretionary purchases that consumers can acquire from many sellers. If a consumer did not want to pay the advertised price, they were free to abstain from purchasing the product or seek out competing products. That is independently fatal to Plaintiffs' claim of unfair conduct under the CPA.

**IV.    Plaintiffs Fail to State a Viable Claim for Declaratory Relief.**

Count IV simply restates Counts I through III in declaratory form and seeks a declaration that retaining the purported "tariff surcharges" is "unlawful for any of the above reasons." Compl. ¶ 102. But "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Thus, a court "cannot grant declaratory relief in the absence of a substantive cause of action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013). Because the substantive counts fail for the myriad reasons described above, Count IV fails alongside them.

**CONCLUSION**

Plaintiffs' claims fail as a matter of law because Nintendo's conduct reflected genuine efforts to protect consumers, not deceive them. Nintendo disclosed to consumers its cost inputs, shouldered the impact of tariffs where it could, and gave Plaintiffs the products they paid for at the agreed-upon price. Although Mr. Hoffert's claims belong in arbitration, both Plaintiffs fail to state a viable claim. The Court should dismiss this lawsuit with prejudice.

*I certify that this memorandum contains 7,190 words, in compliance with the Local Civil Rules.*

DEFENDANT'S MOTION TO DISMISS - 19
CASE NO. 2:26-cv-01360

DATED: July 20, 2026

**STOEL RIVES LLP**

*/s/ Vanessa Soriano Power*
Vanessa Soriano Power (WSBA No. 30777)
**STOEL RIVES LLP**
600 University St.
Ste 3600
Seattle, WA 98101
Tel: (206) 624-0900
vanessa.power@stoel.com

Alison I. Stein (*Pro Hac Vice*)
Cayman C. Mitchell (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
astein@jenner.com
cmitchell@jenner.com

Alexander M. Smith (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Tel: (213) 239-5100
asmith@jenner.com

Adam Unikowsky (*Pro Hac Vice Forthcoming*)
**JENNER & BLOCK LLP**
1099 New York Avenue NW, Suite 900
Washington, DC, 20001-4412
Tel: (202) 639-6041
aunikowsky@jenner.com

*Attorneys for Defendant Nintendo of America Inc.*

DEFENDANT'S MOTION TO DISMISS - 20
CASE NO. 2:26-cv-01360