HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY HOFFERT and PRASHANT SHARAN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NINTENDO OF AMERICA INC.,

Defendant.

Case No. 2:26-cv-01360-RAJ

DEFENDANT'S MOTION TO COMPEL ARBITRATION

NOTE ON MOTION CALENDAR:
August 10, 2026

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - i
CASE NO. 2:26-cv-01360-RAJ

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

    I.    Users Cannot Purchase Products from Nintendo or Access Nintendo's Services Without Contracting with Nintendo. ................................................................................. 2

    II.    The User Agreement and EULA Both Require Arbitration. ........................................... 5

    III.    After Agreeing to Arbitrate, Mr. Hoffert Disregarded the Arbitration Agreements. ...... 6

ARGUMENT ..................................................................................................................... 7

    I.    Mr. Hoffert and Nintendo Formed Agreements to Arbitrate. ........................................ 8

    II.    The Parties Delegated Questions of Arbitrability to the Arbitrator. .............................. 10

    III.    In Any Event, the Agreements Clearly Encompass Mr. Hoffert's Claims. ................... 11

    IV.    The Court Should Stay Mr. Hoffert's Claims Pending Arbitration. .............................. 11

CONCLUSION .................................................................................................................. 12

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - ii
CASE NO. 2:26-cv-01360

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013).................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................................................7

*Ayers v. Epic Games, Inc. et al.*,
No. 24-cv-64, 2024 WL 7112712 (N.D. Fla. Dec. 13, 2024) ......................................9

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..................................................................................7, 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .................................................................................10

*A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*,
2021 WL 1840835, No. C20-1694 TSZ, (W.D. Wash. Apr. 29, 2021).......................9

*Carusone v. Nintendo of Am., Inc.*,
2020 WL 3545468 (N.D. Ala. June 30, 2020)...........................................................9

*Dembiczak v. Fashion Nova, LLC*,
2024 WL 580701, No. 2:23-CV-00408 (W.D. Wash. Feb. 13, 2024)........................6

*Diaz v. Nintendo of Am., Inc.*,
2020 WL 996859 (W.D. Wash. Mar. 2, 2020) ..........................................................9

*Epic Sys. Corp v. Lewis*,
584 U.S. 497 (2018)...............................................................................................12

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)...............................................................................................8, 11

*Mahram v. Kroger Co.*,
104 Cal. App. 5th 303 (2024) ...................................................................................8

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016).................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...................................................................................................11

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - iii
CASE NO. 2:26-cv-01360

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*N.A. v. Nintendo of Am., Inc.*,
   No. 23-cv-02424, 2023 WL 8587628 (N.D. Cal. Dec. 11, 2023)...............................................9

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) .....................................................................................................9

*Rahimi v. Nintendo of Am., Inc.*,
   936 F. Supp. 2d 1141 (N.D. Cal. 2013) ....................................................................................9

*Rent-A-Ctr. W., Inc. v. Jackson*,
   561 U.S. 63 (2010)................................................................................................................7, 10

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ...................................................................................................11

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)..................................................................................................................11

*Storti v. Univ. of Wash.*,
   181 Wash. 2d 28 (Wash. 2014)..................................................................................................8

*Vergara v. Nintendo of Am., Inc.*,
   2020 WL 2571903 (N.D. Ill. May 21, 2020) .............................................................................9

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019) ...................................................................................................9

*Wiseley v. Amazon.com, Inc.*,
   709 F. App'x 862 (9th Cir. 2017) ..............................................................................................8

**Statutes**

9 U.S.C. § 2.................................................................................................................................7

9 U.S.C. § 3...............................................................................................................................11

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - iv
CASE NO. 2:26-cv-01360

**INTRODUCTION**

In this putative class action, Plaintiffs Gregory Hoffert and Prashant Sharan assert that they and other class members are entitled to recoup some or all of the tariff refunds that Defendant Nintendo of America Inc. ("Nintendo") stands to receive from the U.S. government following the Supreme Court's ruling that the government lacked the power to impose those tariffs under the International Emergency Economic Powers Act ("IEEPA"). As explained in Nintendo's concurrently filed motion to dismiss Mr. Sharan's claims, this theory of wrongdoing is meritless. But this Court need not and cannot reach the merits of Mr. Hoffert's claims against Nintendo, which he agreed to arbitrate.[1]

All available evidence shows that Mr. Hoffert affirmatively accepted contractual agreements with Nintendo at least twice. Mr. Hoffert accepted the Nintendo Account User Agreement ("User Agreement") when he created a "Nintendo Account" for himself, and he accepted Nintendo's End-User License Agreement ("EULA") when he set up a new Nintendo Switch console. The User Agreement and EULA both require Mr. Hoffert to arbitrate his claims against Nintendo in lieu of bringing them in court. The User Agreement and EULA also include delegation provisions that require the arbitrator—and not this Court—to decide any questions regarding the enforceability and scope of the arbitration agreements. As a result, the only question this Court must resolve is whether Mr. Hoffert accepted the User Agreement and/or the EULA. The answer to that question is yes.

This Court should compel Mr. Hoffert to arbitrate his claims against Nintendo.

---

[1] Nintendo reserves the right to compel Mr. Sharan's claims to arbitration if discovery reveals his claims are arbitrable.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 1
CASE NO. 2:26-cv-01360-RAJ

# BACKGROUND

**I.    Users Cannot Purchase Products from Nintendo or Access Nintendo's Services Without Contracting with Nintendo.**

Mr. Hoffert alleges that he "purchased goods from Nintendo that were imported from countries subject to the IEEPA tariffs" and that he "paid retail prices for those goods that were increased by Nintendo to account for the tariffs imposed on imported products." Compl. ¶ 18.

To purchase a product on Nintendo's website, Nintendo.com, to purchase digitally-downloaded games on the Nintendo eShop (Nintendo's on-console game store), or to otherwise access Nintendo's services, a user must accept a contractual offer from Nintendo. To begin, as described in the accompanying declaration from one of Nintendo of America's employees ("NOA Decl."), a user must set up a Nintendo Account to make any purchase on Nintendo's website or the Nintendo eShop. NOA Decl. ¶ 4. To set up a Nintendo Account, a user must affirmatively agree to the Nintendo Account User Agreement. *Id.* ¶¶ 4–5. Before a user can finish creating an account, that user must affirmatively check the box indicating acceptance of the User Agreement, which a user can see by selecting the bright blue hyperlink to the "NINTENDO ACCOUNT USER AGREEMENT" in the following screen:

*Id.* ¶¶ 14–15.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 2
CASE NO. 2:26-cv-01360

A user can only proceed with creating an account if that user affirmatively checks the box affirming that "[b]y checking the box and selecting [Submit] below, you agree to the NINTENDO ACCOUNT USER AGREEMENT." *Id.* ¶ 14.  Users must also accept Nintendo's privacy policy. *Id.*  Until users check the boxes indicating their agreement, the "Submit" button remains greyed out, and that user cannot create a Nintendo Account.  *Id.* ¶ 18.  Only if the user checks both boxes indicating the user's assent to both agreements does the "Submit" button activate and turn red, allowing the user to click "Submit" and create a Nintendo Account:

*Id.* ¶¶ 18–19.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 3
CASE NO. 2:26-cv-01360

Similarly, purchasers of a new Nintendo Switch console cannot use the console without first agreeing to the End User License Agreement ("EULA").[2] The packaging of the Nintendo Switch console informs users that they must agree to the EULA to use the console. *See* NOA Decl. ¶ 22. The user then must agree to the EULA during setup through a sequence of screens. *See id.* ¶¶ 23–26. A purchaser cannot complete the setup process and use the Nintendo Switch console without checking the box indicating acceptance of the EULA shown in the screen below:



*Id.* ¶ 24.

The EULA, which appears in full if the purchaser selects the box edged in bright blue that says, "View End-User License Agreement," further states that "By clicking the 'Accept' option, or by using the [c]onsole, you . . . agree to be bound by this Agreement," and that users of the console "who do not agree to this Agreement must not use the [c]onsole." NOA Decl. ¶¶ 27–32 & Ex. D at

---

[2] If a user purchases and activates a Nintendo Switch, Nintendo Switch Lite, or Nintendo Switch OLED, they will be presented with the "Nintendo Switch: User Agreement," first adopted in 2017. NOA Decl. ¶ 8 & Ex. D. If a user purchases and activates a Nintendo Switch 2 console, they will be presented with the "Nintendo Switch 2: User Agreement." NOA Decl. ¶ 9 & Ex. E. Nintendo's records indicate that Mr. Hoffert is using a Nintendo Switch Lite console, so it discusses only the Nintendo Switch: User Agreement here.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 4
CASE NO. 2:26-cv-01360

1. The user cannot complete setup or use the console without affirmatively checking the "Accept" box and selecting the "Next" button.  NOA Decl. ¶¶ 31–32.

**II.    The User Agreement and EULA Both Require Arbitration.**

**The User Agreement.**  The User Agreement's preamble states that it "CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER IN SECTION 16 THAT, TO THE FULLEST EXTENT PERMITTED BY LAW, REQUIRES BOTH YOU AND NINTENDO TO RESOLVE MOST 'CLAIMS' (AS DEFINED IN SECTION 16) ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, A CLASS ACTION, ANY OTHER KIND OF REPRESENTATIVE PROCEEDING, OR BY JURY TRIAL," with a right to opt out under Section 16(j).  NOA Decl. Ex. A at 1.

Section 16(a) of the User Agreement defines a "Claim" as any dispute "that arises from or relates to this Agreement, the Nintendo Account Services or their use or Claims related to the validity, enforceability, or scope of the arbitration provision." *Id.* § 16(a).  Section 16(d) delegates to the arbitrator "disputes arising out of or relating to interpretation or application of this arbitration provision, including the enforceability, revocability, or validity of the arbitration provision or any portion of the arbitration provision." *Id.* § 16(d).  Section 16(e) confirms that the arbitrator has "exclusive authority to make all procedural and substantive decisions regarding any Claim," "including the power to determine all questions of arbitrability." *Id.* § 16(e).  It further provides that Arbitration will be administered by the American Arbitration Association ("AAA") under the AAA Consumer Arbitration Rules, with consumer-protective fee terms. *Id.* §§ 16(e), 16(f).  Section 16(j) gives consumers a 30-day right to opt out of the arbitration requirement. *Id.* § 16(j).

**The EULA.**  The EULA's preamble likewise states that it "CONTAINS A BINDING ARBITRATION AND CLASS ACTION WAIVER PROVISION IN SECTION 7," and that the user has the right to opt out.  NOA Decl. Ex. D at 1.  Section 7(A) provides that "all disputes or claims arising out of or relating to this Agreement, including its formation, enforceability, performance, or breach (each, a 'Claim')," "shall be finally settled by binding arbitration"

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 5
CASE NO. 2:26-cv-01360

administered by AAA under its "Commercial Arbitration Rules and the supplementary procedures for consumer-related disputes." *Id.* § 7(A).[3]  It further provides that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Claims." *Id.*  The arbitration agreement excepts only certain intellectual property and small claims matters, neither of which is at issue here. *Id.* § 7(C).  Nintendo bears arbitration fee differentials and, for non-frivolous claims under $75,000, the filing and arbitrator fees.  Section 7(D) gives consumers a 30-day right to opt out of the arbitration requirement. *Id.* § 7(D).

### III.   After Agreeing to Arbitrate, Mr. Hoffert Disregarded the Arbitration Agreements.

Before filing this motion, Nintendo asked Plaintiffs to identify any email addresses associated with their purchases from Nintendo.  Declaration of Cayman C. Mitchell ("Mitchell Decl.") ¶ 3.  Plaintiffs identified Mr. Hoffert's email address as ███████████████. *Id.* ¶ 4.  Nintendo has identified a Nintendo Account linked to that email address.  NOA Decl. ¶ 42.  The account associated with the ███████████████ email address was created and accepted the July 2020 version of the User Agreement on ███████████████████.  NOA Decl. ¶ 43.  The nickname associated with the Nintendo Account is ████████ and the account's current on-device nickname is ████████. *Id.*  The accountholder entered a birthdate of ████████████, *id.*, which matches public records reports of Gregory Hoffert's birthdate, Mitchell Decl. ¶ 5.  As of May 8, 2026, the account was last accessed on ████████.

Nintendo most recently updated its Nintendo Account User Agreement in May 2025.  Nintendo's records confirm that the user of the account associated with the ██████████████ email address accepted these updated terms on ████████████████. *Id.* ¶ 44.  Nintendo's records indicate Mr. Hoffert did not opt out of the arbitration clause in Nintendo's User Agreement. *Id.* ¶ 47

---

[3] The AAA's supplementary procedures for consumer-related disputes "were superseded in September 2014 by the AAA's Consumer Arbitration Rules." *Dembiczak v. Fashion Nova, LLC*, 2024 WL 580701, at *5 n.6 (W.D. Wash. Feb. 13, 2024).

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 6
CASE NO. 2:26-cv-01360

Mr. Hoffert's account is also linked to a Nintendo Switch Lite console with serial number ███████████; Mr. Hoffert first accessed that console on ███████████. *Id.* ¶ 46. The first game play on that console was on ███████████████. *Id.* This indicates that the console was new at that time, and the EULA would have been accepted on or around ███████████. *Id.* Nintendo's records indicate Mr. Hoffert did not opt out of the arbitration clause in Nintendo's EULA. *Id.* ¶ 48.

Although Mr. Hoffert agreed to arbitrate his claims against Nintendo, he did not pursue individual claims against Nintendo in an arbitral forum as agreed in the User Agreement and EULA. Instead, he filed this putative class action in court. He alleges claims for unjust enrichment, money had and received, violations of the Washington Consumer Protection Act, and declaratory relief, all arising from his purchases of Nintendo products. *See* Compl. ¶¶ 72–102.

## ARGUMENT

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011),[4] and requires courts to enforce arbitration agreements according to their terms, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). This includes delegation clauses, which are provisions in which the parties agree to have an arbitrator decide "gateway questions of arbitrability" in addition to the merits of the underlying dispute. *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

"The FAA limits the court's role to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). But where, as here, the valid arbitration agreement delegates questions of arbitrability to the arbitrator, the "court may not decide the arbitrability issue"

---

[4] Unless noted, all citations and internal quotation marks are omitted from case citations.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 7
CASE NO. 2:26-cv-01360

and must grant the motion to compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

## I.     Mr. Hoffert and Nintendo Formed Agreements to Arbitrate.

The threshold—and dispositive—question is one of contract formation.  Courts apply state-law principles of contract formation to decide whether an agreement to arbitrate exists.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Berman*, 30 F.4th at 855.  Both agreements provide that they are governed by Washington law.  *See* NOA Decl. Ex. A § 18; NOA Decl. Ex. D § 9(A).  Under Washington law, a contract exists where the three customary elements of contract formation are present: "offer, acceptance, and consideration."  *E.g.*, *Storti v. Univ. of Wash.*, 181 Wash. 2d 28, 35 (Wash. 2014).[5]  Mr. Hoffert formed at least two contracts to arbitrate his claims against Nintendo: one when he accepted the User Agreement to create his Nintendo Account in ▮ (and again when he accepted the May 2025 version of the User Agreement), and another when he accepted the EULA to set up his Nintendo Switch Lite.

**Offer.**   The offer was simple:  Nintendo would provide access to its online platform and console in exchange for assent to the User Agreement and EULA, respectively.  The terms were conspicuous.   Mr. Hoffert had to confirm he "agree[d] to the NINTENDO ACCOUNT USER AGREEMENT."  NOA Decl. ¶ 14.  The User Agreement was hyperlinked, in blue-colored font and underlined to set it apart from the text surrounding it, and it required Mr. Hoffert to complete an affirmative act (checking a box) to manifest his assent.  *Id*. ¶¶ 15–17.  During the Nintendo Switch Lite console setup, the EULA was similarly conspicuously hyperlinked in a box edged in bright blue,

---

[5] It makes no difference that Mr. Hoffert resides in California. *See* Compl. ¶ 18.  Because Nintendo maintains its principal place of business in Washington and Mr. Hoffert voluntarily filed suit here, there is no bar to applying Washington law.  Nor would it make a difference if this Court applied California law, which applies the same standard for contract formation. *See Mahram v. Kroger Co.*, 104 Cal. App. 5th 303, 308 (2024) ("The formation of a contract requires a bargain in which there was a manifestation of mutual assent to the exchange and consideration."); *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) (holding that the Court would reach the same result on a motion to compel arbitration under Washington and California law).

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 8
CASE NO. 2:26-cv-01360

and Mr. Hoffert had to check the box next to the term "Accept" to agree to the terms and proceed with setup.  *Id*. ¶¶ 27, 30–32.  In addition, the EULA makes clear that use of the console indicates agreement with the EULA and its arbitration clause, and that a user may return the console if the user does not agree.  *Id*. Ex. D at 1.  In both the account creation flow and console setup flow, the "Submit" and "Next" buttons, respectively, are greyed out until the user manifests assent to the terms; only then do those buttons activate, allowing the user to proceed.  NOA Decl. ¶¶ 29–32.

**Acceptance.**  The User Agreement and EULA are textbook "clickwrap" agreements, which "require users to affirmatively assent to the terms of use before they can access the website and its services."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019).  Because "clickwrap" agreements require affirmative action by the user, courts "routinely find clickwrap agreements enforceable."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023).  Indeed, courts have repeatedly held that the methods by which users agree to Nintendo's User Agreement and EULA create enforceable agreements to arbitrate.  *See Ayers v. Epic Games, Inc. et al.*, No. 24-cv-64, 2024 WL 7112712, at *1–2 (N.D. Fla. Dec. 13, 2024) (finding Nintendo's User Agreement's arbitration clause enforceable by acceptance through clickwrap set-up process); *N.A. v. Nintendo of Am., Inc.*, No. 23-cv-02424, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023) (same); *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *1 & n.1 (W.D. Wash. Apr. 29, 2021) (same); *Carusone v. Nintendo of Am., Inc.*, 2020 WL 3545468, at *3–6 (N.D. Ala. June 30, 2020) (same); *Vergara v. Nintendo of Am., Inc.*, 2020 WL 2571903, at *1–3 (N.D. Ill. May 21, 2020) (same); *Diaz v. Nintendo of Am., Inc.*, 2020 WL 996859, at *1 (W.D. Wash. Mar. 2, 2020) (same); *Rahimi v. Nintendo of Am., Inc.*, 936 F. Supp. 2d 1141, 1142–44 (N.D. Cal. 2013) (same).

As for acceptance of that offer, all available evidence shows that Mr. Hoffert accepted the User Agreement on ███████████████████ when creating the ███████████ Nintendo Account, and again on ███████████████ after the terms were updated.  NOA Decl. ¶¶ 43–45.  The email address associated with the account matches the email address Plaintiff's counsel provided, and the birthdate on the ███████████ account matches Plaintiff

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 9
CASE NO. 2:26-cv-01360

Hoffert's birthdate according to a public records search.  *Compare* NOA Decl. ¶ 43, *with* Mitchell Decl. ¶ 5.  The evidence also shows that Mr. Hoffert accepted the EULA on or around ███████ when he set up the Nintendo Switch Lite console with serial number ███████████.  NOA Decl. ¶ 46.

**Consideration.**  Finally, there is no question that Nintendo provided consideration in exchange for those acceptances: namely, access to Nintendo's products and services.

**II.    The Parties Delegated Questions of Arbitrability to the Arbitrator.**

To resolve this motion, the Court need only find that Mr. Hoffert is bound by the User Agreement and/or the EULA.  When an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—*i.e.*, a clause that delegates arbitrability disputes to an arbitrator—"the FAA operates on this additional arbitration agreement" and requires a court to "compel[] arbitration" of those threshold arbitrability issues.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–70 & n.1 (2010).  This rule is dispositive in this case because both the User Agreement and EULA contain "clear and unmistakable" delegation clauses.

The User Agreement delegates disputes over "the enforceability, revocability, or validity of the arbitration provision," and it confirms the arbitrator's "power to determine all questions of arbitrability."  NOA Decl. Ex. A §§ 16(d), 16(e).  The EULA similarly gives the arbitrator "exclusive authority to resolve all Claims," which it defines to include disputes over the agreement's "formation, enforceability, performance, or breach."  NOA Decl. Ex. D § 7(A).  These are textbook delegation clauses, and they are enforceable.  *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (reversing denial of motion to compel where express delegation clause committed arbitrability to the arbitrator).  Both agreements also incorporate the AAA rules, which independently supply clear and unmistakable evidence of delegation, since the AAA rules authorize the arbitrator to "rule on his or her own jurisdiction" including with respect to the "validity of the arbitration agreement."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015).

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 10
CASE NO. 2:26-cv-01360

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

The consequence is straightforward.  Any argument Mr. Hoffert may raise about whether his claims fall outside the arbitration provisions, or that the agreements are unenforceable, is for the arbitrator, not this Court.  *See Henry Schein*, 586 U.S. at 68–69.

**III.    In Any Event, the Agreements Clearly Encompass Mr. Hoffert's Claims.**

Even if the Court reached the arbitrability questions the parties delegated, the result would be the same.  Mr. Hoffert's claims arise from his purchases of Nintendo products from Nintendo. The User Agreement reaches claims that "arise[] from or relate[] to this Agreement, the Nintendo Account Services or their use."  NOA Decl. Ex. A § 16(a).  The EULA reaches "all disputes or claims arising out of or relating to" the agreement governing the console and its accessories.  NOA Decl. Ex. D § 7(A).  This language is construed broadly and reaches "every dispute between the parties having a significant relationship to the contract."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (construing the language "arising in connection with").

Mr. Hoffert alleges that Nintendo will improperly retain tariff refunds for goods that he paid inflated prices for.  *See, e.g.*, Compl. ¶¶ 1, 7, 9.  Those claims relate to his acquisition and use of the very products the agreements govern, and so they are clearly covered by the arbitration clauses.  If there is any doubt about the scope of the provision, this Court must resolve any such doubt in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**IV.    The Court Should Stay Mr. Hoffert's Claims Pending Arbitration.**

Under the FAA, a court must grant a motion to stay judicial proceedings once it has determined that the dispute is subject to a valid arbitration agreement.  *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476–78 (2024).  Because Nintendo has demonstrated that the parties formed valid agreements to arbitrate, and because those agreements clearly and unmistakably delegate to the arbitrator the power to decide threshold issues including scope, the Court should compel arbitration and stay Mr. Hoffert's claims against Nintendo until any arbitration concludes.

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 11
CASE NO. 2:26-cv-01360

**CONCLUSION**

The FAA directs courts to "respect and enforce the parties' chosen arbitration procedures" and "rigorously . . . enforce arbitration agreements according to their terms." *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 506 (2018).  The parties here unquestionably agreed to arbitrate the claims at issue, including threshold questions of arbitrability.  The Court should grant Nintendo's motion, compel Mr. Hoffert's claims to arbitration, and stay the action as to Mr. Hoffert.

*I certify that this memorandum contains 3,477 words, in compliance with the Local Civil Rules.*

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 12
CASE NO. 2:26-cv-01360

DATED: July 20, 2026

**STOEL RIVES LLP**

*/s/ Vanessa Soriano Power*

Vanessa Soriano Power (WSBA No. 30777)
**STOEL RIVES LLP**
600 University St.
Ste 3600
Seattle, WA 98101
Tel: (206) 624-0900
vanessa.power@stoel.com

Alison I. Stein (*Pro Hac Vice*)
Cayman C. Mitchell (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
astein@jenner.com
cmitchell@jenner.com

Alexander M. Smith (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Tel: (213) 239-5100
asmith@jenner.com

Adam Unikowsky (*Pro Hac Vice Forthcoming*)
**JENNER & BLOCK LLP**
1099 New York Avenue NW, Suite 900
Washington, DC, 20001-4412
Tel: (202) 639-6041
aunikowsky@jenner.com

*Attorneys for Defendant Nintendo of America Inc.*

DEFENDANT'S MOTION
TO COMPEL ARBITRATION - 13
CASE NO. 2:26-cv-01360