HONORABLE RICHARD A. JONES

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| GREGORY HOFFERT and PRASHANT SHARAN, individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>vs.<br><br>NINTENDO OF AMERICA INC.<br><br>Defendant | Case No. 2:26-cv-01360-RAJ<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: September 4, 2026 |



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ............................................................................................................ 3

I. Plaintiffs State Claims for Unjust Enrichment. ........................................................ 3

A. Nintendo's Contract and Voluntary-Payment Arguments Do Not Bar Plaintiffs' Unjust Enrichment Claim. ........................................................................ 4

B. Plaintiffs Conferred a Benefit on Nintendo when They Paid Passed-Through Tariff Costs. ........................................................................................................ 7

C. Nintendo's Retention of Refunds for Tariff Costs Borne by Its Customers Would be Unjust. ........................................................................................................ 10

II. Plaintiffs State Claims for Money Had and Received. ........................................... 11

III. Plaintiffs State Claims under Washington's Consumer Protection Act. .................... 14

A. Nintendo's Unfair and Deceptive Practices Caused Substantial Consumer Injury.... 14

B. Nintendo's Unfair Practices Have No Countervailing Benefit. ................................ 18

C. Consumers Could Not Reasonably Avoid the Alleged Injury. ................................. 19

IV. Plaintiffs State a Claim under the Declaratory Judgment Act. ................................ 20

V. Any Dismissal Should Be With Leave to Amend. .................................................... 20

CONCLUSION ........................................................................................................ 21




**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Alhadeff v. Meridian on Bainbridge Island, LLC*
167 Wn.2d 601 (2009)........ 12

*Am. Fin. Servs. Ass'n v. FTC*
767 F.2d 957 (D.C. Cir. 1985)........ 20

*Atmus Filtration, Inc. v. United States*
No. 1:26-cv-01259 (Ct. Int'l Trade March 4, 2026, and March 5, 2026) ........ 3

*Austin v. Ettl*
171 Wn. App. 82 (2012)........ 10

*Bawazir v. Boeing Co.*
100 Wn. App. 1018 (Apr. 3, 2000)........ 6

*Bayley v. Lewis*
39 Wn.2d 464 (1951)........ 13

*Behnke v. Ahrens*
172 Wn. App. 281 (2012)........ 17

*Boeing Co. v. Sierracin Corp.*
108 Wn.2d 38 (1987)........*Passim*

*Cf. United States v. Jefferson Electric Mfg. Co.*
291 U.S. 386 (1934) ........ 11

*Dagher v. Saudi Refining, Inc.*
369 F.3d 1108 (9th Cir. 2004) ........ 19

*Daugherty v. American Honda Motor Co., Inc.*
144 Cal. App. 4th 824 (2006)........ 17

*Davenport v. Washington Educ. Ass'n*
147 Wn. App. 704 (2008)........ 13



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**CASES** **PAGE**

*Davis v. HSBC Bank Nevada, N.A.*
691 F.3d 1152 (9th Cir. 2012). ........ 20

*Digital Mentor, Inc. v. Ovivo USA, LLC*
No. C17-1935-RAJ , 2018 WL 6724765 (W.D. Wash. Dec. 21, 2018)........ 5

*Dunseath v. Hallauer*
41 Wn.2d 895 (1953)........ 8

*Eng v. Specialized Loan Servicing*
20 Wn. App. 2d 435 (2021)........ 17

*Erwin v. Cotter Health Centers, Inc.*
161 Wn.2d 676 (2007)........ 7

*Farwest Steel Corp. v. Mainline Metal Works, Inc.*
48 Wn. App. 719 (1987)........ 9

*Federal Trade Commission v. Neovi, Inc.*
604 F.3d 1150 (9th Cir. 2010) ........ 14

*Frame-Wilson v. Amazon.com, Inc.*
591 F. Supp. 3d 975 (W.D. Wash. 2022) ........ 8

*Gerboc v. ContextLogic, Inc.*
867 F.3d 675 (6th Cir. 2017) ........ 6

*Greenberg v. Amazon.com, Inc.*
3 Wn.3d 434 (2024)........*Passim*

*Harper v. Virginia Department of Taxation*
509 U.S. 86 (1993) ........ 7

*Hawkinson v. Conniff*
53 Wn.2d 454 (1959)........ 5




**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**CASES** **PAGE**

*In re Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)*
No. 25-00595 (Ct. Int'l Trade July 28, 2026)........ 3

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*
162 Wash.2d 59 (2007) ........ 5, 6

*Klem v. Washington Mutual Bank*
176 Wn.2d 771 (2013)........ 17

*Kraft v. Spencer Tucker Sales, Inc.*
39 Wn.2d 943 (1952)........ 13

*Langham-Hill Petroleum Inc. v. S. Fuels Co.*
813 F.2d 1327 (4th Cir. 1987). ........ 11

*Larsen v. Walton Plywood Co.*
65 Wn.2d 1 (1964)........ 8

*Leadsinger, Inc. v. BMG Music Publ'g*
512 F.3d 522 (9th Cir. 2008). ........ 21

*Learning Resources, Inc. v. Trump*
146 S. Ct. 628 (2026) ........*Passim*

*Lopez v. Smith*
203 F.3d 1122 (9th Cir. 2000) ........ 20

*Maxwell v. Provident Mutual Life Insurance Co.*
180 Wash. 560 (1935) ........ 5

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*
496 U.S. 18 (1990). ........ 11

*Money Mailer, LLC v. Brewer*
194 Wn. 2d 111, 449 P.3d 258 (2019) ........ 9



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**CASES** **PAGE**

*Montes v. SPARC Group LLC*
6 Wn.3d 321 (Wash. 2026)........................................ 15, 16

*N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*
799 F.2d 265 (7th Cir. 1986)........................................ 11

*Northwood Estate, LLC v. Lennar Northwest, Inc.*
12 Wn. App. 2d 1038 (2020),........................................ 4

*Panag v. Farmers Insurance Co. of Washington*
166 Wn.2d 27 (2009)........................................ 17

*RL Liquidators LLC v. Amazon.com Services LLC*
No. 2:24-cv-02096-JHC, 2026 WL 787664 (W.D. Wash. Mar. 20, 2026)........................................ 14

*Schnall v. AT&T Wireless Services, Inc.*
171 Wn.2d 260 (2011)........................................ 14

*Seekamp v. Small*
39 Wn. 2d 578 (1951)........................................ 12

*Speckert v. Bunker Hill Arizona Min. Co.*
6 Wn.2d 39 (1940)........................................ 6

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*
256 F.3d 879 (9th Cir. 2001)........................................ 10, 16

*Taylor v. Amazon.com, Inc.*
No. 2:24-cv-00169-MJP, 2025 WL 104381 (W.D. Wash. Jan. 15, 2025)........................................ 14, 19

*V.O.S. Selections, Inc. v. United States*
No. 1:25-cv-00066 (Ct. Int'l Trade March 2, 2026)........................................ 3

*Veridian Credit Union v. Eddie Bauer, LLC*
295 F. Supp. 3d 1140 (W.D. Wash. 2017)........................................ 14, 17



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

**CASES** **PAGE**

*Young v. Young*
164 Wn.2d 477 (2008) ........ 9

**STATUTES** **PAGE**

Declaratory Judgment Act ("DJA") ........ *Passim*

International Emergency Economic Powers Act ("IEEPA") ........ *Passim*

Washington Consumer Protection Act ("CPA") ........ *Passim*

**RULES** **PAGE**

Fed. R. Civ. P. 15(a)(2) ........ 20

Fed. R. Civ. P. 12(b)(6) ........ 4, 20



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

## INTRODUCTION

Nintendo's Motion rests on a mischaracterization of this case. Plaintiffs do not challenge Nintendo's general authority to set prices or contend that Nintendo was prohibited from responding to increased costs associated with the International Emergency Economic Powers Act ("IEEPA") tariffs. Instead, they allege that Nintendo incorporated those tariff costs into the prices of selected products, thereby passing at least part of the cost to consumers, and now seeks reimbursement of the same tariff costs from the government without returning the corresponding consumer-funded amounts.

*First*, Plaintiffs adequately plead unjust enrichment. Nintendo's contract and voluntary-payment arguments fail because Nintendo identifies no contractual term governing entitlement to a later government tariff refund, and Plaintiffs did not make their purchases with full knowledge of the facts giving rise to the alleged double recovery. Plaintiffs also plausibly allege that they conferred a benefit on Nintendo by paying prices that reflected passed-through tariff costs. The precise amount of the tariff-related component and the extent to which particular purchases reflected those costs are questions of proof, not pleading. And Plaintiffs plausibly allege that Nintendo's retention of both the consumer-funded tariff amounts and the corresponding government reimbursement would be unjust.

*Second*, Plaintiffs adequately plead their claim for money had and received. Nintendo improperly treats failure of consideration as a prerequisite to that claim even though Washington law recognizes multiple equitable bases for recovery. Plaintiffs do not contend that Nintendo wrongfully received the purchase price in the first instance. Rather, they allege that Nintendo's continued retention of the tariff-related amounts becomes inequitable when Nintendo also obtains reimbursement for the corresponding tariff costs from the government.

*Third*, Plaintiffs adequately plead their Washington Consumer Protection Act ("CPA") claim. Plaintiffs allege an objective monetary injury from paying prices that included tariff-related costs Nintendo now seeks to recover from another source. That alleged practice caused



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

widespread consumer injury, provides no countervailing consumer benefit merely because Nintendo had legitimate reasons to account for tariffs while they remained a cost, and could not reasonably be avoided because consumers lacked the information necessary to identify or evaluate the tariff-related component of the prices they paid. Alternatively, Plaintiffs adequately allege deceptive conduct based on Nintendo's representations that tariffs were incorporated into pricing without disclosure of how Nintendo would treat those amounts if the tariffs were later refunded.

*Finally*, because Plaintiffs adequately plead their substantive claims, their Declaratory Judgment Act claim survives as well. At minimum, any pleading deficiency concerning the particular products purchased, purchase channels, or tariff-related amounts is readily curable by amendment.

For these reasons, and for those set forth more fully below, Nintendo's Motion should be denied. In the alternative, Plaintiffs respectfully request leave to amend any pleading deficiency the Court identifies.

## **FACTUAL BACKGROUND**

Beginning in February 2025, the federal government imposed IEEPA tariffs on imports from numerous countries. Plaintiffs allege that U.S. importers, like Nintendo, incorporated those increased costs into their prices, shifting at least part of the economic burden to consumers. ¶¶ 2-3.[1] Nintendo in particular was exposed to the tariffs imposed under the IEEPA as imported goods account for all of Nintendo's retail sales in the United States. ¶ 26.

When faced with these increased costs, Nintendo adjusted its pricing and sold affected goods at elevated prices. ¶¶ 41-42, 45. Nintendo acknowledged as much in its own public statements. ¶¶ 43–44. Specifically, Nintendo's CEO acknowledged that "[o]ur basic policy is that for any country or region, if tariffs are imposed, we recognize them as a part of the cost and incorporate them into the price." ¶ 44.

[1] "¶" citations refer to the Complaint in this matter, ECF No. 1.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

On February 20, 2026, the Supreme Court deemed the IEEPA tariffs unlawful, thereby permitting importers to seek repayment of the duties paid. ¶¶ 30-33. On March 6, 2026, Nintendo filed suit in the Court of International Trade ("CIT") seeking invalidation of the tariffs and refunds of all duties collected from it under the challenged orders. ¶¶ 50-51. The Complaint alleges that Nintendo, as a major importer, stands to recover substantial tariff refunds. ¶¶ 56-57.[2]

Each Plaintiff alleges that, during the Class Period, they purchased imported goods from Nintendo at prices increased to account for the IEEPA tariffs and would not have paid those higher prices absent Nintendo's tariff pass-through. ¶¶ 18-19, 39, 47-79, 92, 95. Plaintiffs accordingly allege that Nintendo seeks to recover the same economic burden twice—first through overcharging them and again through refunds from the federal government—without restoring the corresponding amounts to the consumers who paid them. ¶¶ 18-19, 39, 40-49, 56-57, 75, 79-82.

## <u>ARGUMENT</u>

### I. Plaintiffs State Claims for Unjust Enrichment.

Plaintiffs conferred monetary benefits on Nintendo through their payment of passed-through tariff costs included in the price of purchased products. ¶¶ 6-11. Plaintiffs allege Nintendo raised prices in response to the IEEPA tariffs, which increased Nintendo's costs on imported goods, and that consumers paid elevated prices reflecting those tariff-related increases.

---

[2] The implementation of the Supreme Court's IEEPA ruling is not only underway but more than half complete. On March 4, 2026, the Court of International Trade, ordered liquidation or reliquidation of IEEPA duties. *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259, ECF Nos. 21 and 29, (Ct. Int'l Trade March 4, 2026, and March 5, 2026); *see also V.O.S. Selections, Inc. v. United States*, No. 25-00066, ECF No. 73 (mandate) (Ct. Int'l Trade March 2, 2026). "The natural result of the order was that the unlawfully assessed duties would be refunded." *In re Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)*, No. 25-00595 ECF No. 53 at *1-2, (Ct. Int'l Trade July 28, 2026). As of July 10, 2026, the resulting refund program has accepted for processing $121,750,000,000 of the approximately $166,000,000,000 to be refunded. *Id* at 2. Thus far approximately $86.3 billion has already been sent to the U.S. Department of Treasury for disbursement. *Id*.[2]

While the government appealed Judge Eaton's order in *Atmus* holding that IEEPA duties be liquidated and returned to the importers, the sole basis of that appeal is that refunds should be issued only to those companies that already sued for refunds. *V.O.S. Selections, Inc. v. United States*, No. 1:25-cv-00066, ECF No. 88 at *3 (Ct. Int'l Trade May 29, 2026). Nintendo is one of those companies, having filed its refund suit on March 6, 2026, so even if the government's appeal is successful, it would not put Nintendo's tariff refund in jeopardy. ¶ 50.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

¶¶ 40-46. Plaintiffs further allege Nintendo is pursuing the refund of the now-invalidated tariffs through the U.S. Court of International Trade, requesting the refund of all duties paid under the tariffs. ¶¶ 50-51. The complaint pleads that Nintendo thereby retains an improper windfall, by keeping the tariff costs passed through to consumers and later reimbursed by the government. ¶ 57.

Plaintiffs do not ask this Court to unwind their purchases, to declare that Nintendo charged too much, reprice a previously completed sale, or become a "pricing commissar" as suggested by Nintendo. Mot. at 8. Rather, Plaintiffs allege Nintendo built the cost of unlawful federal tariffs into the prices consumers paid. Now, after the Supreme Court held that those tariffs were never authorized (*Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026)), Nintendo stands to recover the same dollars a second time, from the federal government, while keeping what it already collected from consumers. The wrong is the double recovery. Plaintiffs plausibly plead these allegations, which must be taken as true on a Rule 12(b)(6) motion, in support of their claims for unjust enrichment.

### A. Nintendo's Contract and Voluntary-Payment Arguments Do Not Bar Plaintiffs' Unjust Enrichment Claim.

Nintendo first contends that unjust enrichment is unavailable because it is a "gap-filling" doctrine and "a contract governs the parties' relationship." Mot. at 7. But Nintendo identifies no contractual term governing the subject of Plaintiffs' equitable claim: Nintendo's receipt and retention of a later government reimbursement for tariff costs allegedly passed through to consumers. That is the very gap that unjust enrichment and money had and received exist to fill. Nintendo cannot invoke contract principles to bar the equitable claim while simultaneously denying that any contract term addresses the refund at issue. Nintendo's own cited case, *Northwood Estate, LLC v. Lennar Northwest, Inc.*, 12 Wn. App. 2d 1038, at *8 (2020), explains that unjust enrichment may "fill in gaps in a contract related to an unforeseen event," and is unavailable only "if the claim is covered by the terms of a contract." There, the parties' detailed agreement expressly prescribed what would occur if the precise contingency underlying the



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

plaintiff's claim occurred. *Id.*; *see Indoor Billboard,* 162 Wash.2d at 86 ("Washington courts have generally applied the voluntary payment doctrine only in the contract context"). Here, Nintendo identifies no contractual term addressing tariff refunds or allocating a later government reimbursement between Nintendo and consumers.[3]

Nintendo next argues that Plaintiffs' purchases were voluntary and made with "full knowledge" because they knew the advertised price and Nintendo had publicly communicated that tariffs were "among the levers informing its pricing strategy." Mot. at 8. However, the voluntary payment doctrine applies only where money is paid "with knowledge by the payor of the facts on which the claim is based." *Hawkinson v. Conniff*, 53 Wn.2d 454, 458 (1959).[4] Knowing that tariffs affected Nintendo's pricing generally is not the same as knowing whether, or to what extent, Nintendo passed those tariff costs through in the particular prices Plaintiffs paid. Indeed, Nintendo elsewhere faults Plaintiffs for precisely that lack of knowledge, arguing that they cannot identify "any portion of the purchase price" attributable to tariffs. Mot. at 9. Nintendo cannot have it both ways: it cannot argue that Plaintiffs failed to plead a conferred benefit because they do not know how much of their purchase prices reflected passed-through tariff costs, while simultaneously arguing that Plaintiffs voluntarily paid those same tariff costs with "full knowledge" of the relevant facts. Moreover, at the time of Plaintiffs' purchases, the Supreme Court had not yet declared the tariffs unlawful, and Defendant had not yet filed its refund petition. Plaintiffs therefore did not know that Nintendo would seek reimbursement from the government or that it would refuse to share its recovery with the customers who footed the bill. To the extent these facts are somehow disputed, they should be decided by the ultimate

---

[3] *Digital Mentor, Inc. v. Ovivo USA, LLC*, No. No. C17-1935-RAJ, 2018 WL 6724765, at *12–13 (W.D. Wash. Dec. 21, 2018), is likewise distinguishable. There, the plaintiff did "not dispute that there [was] an express contract between the parties"—including a Master Agreement and NDA—and nevertheless sought unjust enrichment based on benefits arising from the same relationship, without adequately pleading any connection between noncontractual misconduct and the allegedly unjust benefit. *Id.* at *13.

[4] *Maxwell v. Provident Mutual Life Insurance Co.*, 180 Wash. 560, 567–69 (1935), cited by Nintendo, recites the same voluntary-payment rule but ultimately permitted restitution where the defendant retained a payment after the consideration for that payment failed.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

finder of fact—not by the Court on a motion to dismiss at the pleading stage. *See Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 85 (2007) (whether the payor had "full knowledge of all the facts" was a genuine fact question); *Speckert v. Bunker Hill Arizona Min. Co.*, 6 Wash.2d 39, 52 (1940) (explaining that "when the facts are in dispute it is for the jury to say whether the money was paid voluntarily").

Nintendo's reliance on its own public statements (¶¶ 40–48) does not alter the analysis. Mot. at 8. While those statements establish that tariffs were a real, identifiable driver of price increases, they do not establish that consumers knew the amount of the tariff-related component embedded in any particular purchase. Nintendo's own President stated only that Nintendo's policy was to recognize tariffs "as a part of the cost and incorporate them into the price." ¶ 44. Thus, those statements support Plaintiffs' allegation that tariff costs were passed through; they do not establish "full knowledge" sufficient to trigger the voluntary payment doctrine.

Nor does the fact that Plaintiffs received the Nintendo products they purchased resolve the claim. Mot. at 7 (citing *Bawazir v. Boeing Co.*, 100 Wn. App. 1018, at *7 (Apr. 3, 2000); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679 (6th Cir. 2017)).[5] Plaintiffs do not allege that Nintendo was unjustly enriched because it failed to deliver the promised products, nor do they seek to unwind the sales or recover the entire purchase price. The alleged enrichment arises from a later and distinct event: Nintendo's retention of the tariff-related amounts allegedly passed through to consumers while also recovering the corresponding tariff costs from the government. ¶¶ 49, 56–57, 73–76. Whether Plaintiffs received the products they purchased therefore does not answer whether Nintendo may retain that alleged duplicative recovery.

Nintendo also argues that the tariffs were not "unlawful" when paid and that their subsequent invalidation cannot "retroactively convert a fair transaction" into an unfair one. Mot.

[5] Neither *Bawazir* nor *Gerboc* addresses the alleged enrichment here. In *Bawazir*, Boeing had already paid the party to whom it was contractually obligated for the services it received; the court therefore found no unpaid benefit retained by Boeing. 100 Wn. App. 1018, at *7. *Gerboc*, applying Ohio law, involved a consumer who sought a partial refund based on an allegedly illusory advertised discount even though he conceded the product was worth what he paid; there was no subsequent collateral recovery by the seller. 867 F.3d at 679–80.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

at 8. But *Learning Resources* did not merely alter federal law prospectively; its interpretation of IEEPA applies retroactively under ordinary principles governing Supreme Court decisions. *See Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect . . . ."). In any event, Nintendo's premise again mischaracterizes the claim. Plaintiffs do not contend that the purchases themselves became retroactively unlawful. Their theory is that Nintendo's subsequent recovery of the corresponding tariff costs, while retaining the amount allegedly passed through to consumers, creates the unjust enrichment.

Nintendo's related appeal to the "finality" of completed sales fares no better. Mot. at 8. Plaintiffs do not ask the Court to recalculate a completed sale merely because an ordinary input cost later increased, decreased, or proved different from what the parties anticipated. The agreed purchase price remains the purchase price. Plaintiffs instead challenge Nintendo's retention of a distinct, later-acquired benefit—the government's reimbursement of tariff costs that Nintendo allegedly already shifted, in whole or in part, to consumers. Nothing about respecting the finality of the underlying sale resolves entitlement to that subsequent recovery. And Nintendo's citation to *Erwin v. Cotter Health Centers*, Inc., 161 Wn.2d 676, 700 (2007), for the general proposition that contract law protects the parties' justified expectations does not establish otherwise. Again, Nintendo identifies no contractual term, let alone one that would have created a justified expectation that it could retain a later government reimbursement of costs allegedly borne by its customers.

### B. Plaintiffs Conferred a Benefit on Nintendo when They Paid Passed-Through Tariff Costs.

Nintendo next claims that the Complaint is too "threadbare" because it does not identify the specific products Plaintiffs purchased, the portion of each price attributable to tariffs, or the sellers from whom Plaintiffs bought. Mot. at 9. But the Complaint alleges facts sufficient to make



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

the asserted benefit plausible, and Rule 8 does not require Plaintiffs to prove the precise tariff-related component of their purchases at the pleading stage.

Plaintiffs allege that they purchased Nintendo products imported from tariffed countries and paid retail prices "increased by Nintendo to account for the tariffs." ¶¶ 18–19. Nintendo's public statements corroborate the allegation with particularity. Nintendo announced dated, dollar-specific increases on identified products, such as raising the Switch 2 Pro Controller from $79.99 to $84.99 and the Dock Set from $109.99 to $119.99 and attributed those increases to "market conditions" that its own President identified as including tariffs. ¶¶42–45. That is more than enough to render plausible the inference that some ascertainable portion of the prices Plaintiffs paid reflected the tariffs. This case at hand is, therefore, far removed from the one cited by Nintendo, *Frame-Wilson v. Amazon.com, Inc*., 591 F. Supp. 3d 975, 995 (W.D. Wash. 2022), where the plaintiffs "alleg[ed] no facts consistent with the claim that they conferred a benefit." Here, Nintendo has publicly admitted the benefit and those facts have been alleged in the Complaint.

The precise tariff-related portion of each price is a question of proof, not a basis for dismissal. Once the existence of an alleged monetary injury is adequately pleaded, uncertainty as to its precise amount does not defeat recovery. *See Dunseath v. Hallauer*, 41 Wn.2d 895, 902 (1953) ("[D]ifficulty of ascertainment of the amount of damage is not to be confused with the right of recovery"); *Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 17 (1964) ("Where the fact is well established that profits would have been made and the difficulty in proving their amount is directly caused by the defendant's breach, a greater liberality is permitted in making estimates and drawing inferences"). If it did, any defendant could defeat an unjust enrichment claim simply by declining to itemize. Nintendo's own statements tie specific price increases to tariffs and Plaintiffs are entitled to prove their magnitude in discovery.

Nintendo argues that if Plaintiffs purchased through third-party retailers, they conferred a benefit only on the retailer, and not Nintendo, so no unjust enrichment claim can lie. Mot. at 9



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

(citing *Farwest Steel Corp. v. Mainline Metal Works, Inc.,* 48 Wn. App. 719, 732–33 (1987)). Nintendo's argument improperly converts *Farwest* into a privity requirement that Washington law does not recognize. Unjust enrichment exists precisely "absent any contractual relationship" between the parties. *Young v. Young*, 164 Wn.2d 477, 484 (2008). And *Farwest* did not hold that a plaintiff must purchase directly from the defendant; it held that the defendant must be "more than a mere incidental beneficiary of the transaction." 48 Wn. App. at 732–33. Thus, the relevant question is whether Plaintiffs' tariff-inflated payments conferred a benefit on Nintendo and whether Nintendo's retention of that benefit under the circumstances alleged would be inequitable. That is precisely what Plaintiffs allege here: that Nintendo itself made the pricing decisions at issue: it treated tariffs as a cost, incorporated those costs into pricing, and passed at least part of that cost through to consumers. ¶¶ 39, 44, 47, 49. At minimum, any perceived deficiency concerning the particular products Plaintiffs purchased or the channels through which they purchased them is readily curable by amendment. Should the Court require greater specificity, Plaintiffs request leave to amend, *see infra* § V, to plead those facts expressly.[6]

Plaintiffs' allegations are sufficient to make the asserted benefit plausible at the pleading stage. The Complaint alleges that each Plaintiff purchased Nintendo goods whose prices Nintendo increased to account for tariffs, ¶¶ 18–19 and separately alleges product-specific price increases and Nintendo's acknowledgment that tariffs were incorporated into pricing, ¶¶ 40–49. Should the Court require greater specificity, leave to amend (as requested below *see infra*. § V) would allow Plaintiffs to readily plead the specific products they purchased and the channels through which they purchased them.

---

[6] Nintendo's citation to *Money Mailer, LLC v. Brewer*, 194 Wn. 2d 111, 449 P.3d 258 (2019) is inapposite because its observation that prices often increase across levels of distribution merely illustrated why ordinary markups are not inherently unlawful; it did not address unjust enrichment or hold that a manufacturer cannot receive a benefit from downstream consumer payments.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

### C. Nintendo's Retention of Refunds for Tariff Costs Borne by Its Customers Would be Unjust.

Nintendo also argues that nothing about its conduct is "unjust" because passing tariff costs through to consumers is an ordinary business practice and the later invalidation of the tariffs amounts merely to a "divergence between expectation and realization." Mot. at 10. But that argument centers on the wrong conduct. Plaintiffs do not contend that Nintendo's initial decision to incorporate then-existing tariff costs into its prices, standing alone, was unjust. Rather, Plaintiffs challenge Nintendo's alleged retention of a later government reimbursement for tariff costs that it had already shifted, in whole or in part, to consumers. ¶¶ 39, 44, 47, 49, 56–57. Thus, Plaintiffs are not disappointed bargainers seeking to undo a poor deal because an input cost later changed; the alleged unjust enrichment arises from Nintendo's subsequent recovery of the corresponding tariff costs while retaining the tariff-related amounts already collected from consumers. Nintendo's authorities recognizing that businesses may lawfully pass increased costs through in their prices do not address that alleged duplicative recovery.[7]

Nor does the Restatement principle Nintendo invokes—that restitution is not available merely because a "divergence between expectation and realization is later revealed"—resolve the claim. Mot. at 10. Plaintiffs do not allege that Nintendo expected tariffs to remain in place, that this expectation proved mistaken, and that the purchase price therefore should be recalculated with hindsight. The later event alleged here is Nintendo's receipt of a distinct benefit from a third party: reimbursement by the government of tariff costs that Nintendo allegedly had already passed through to consumers. The question is therefore not whether a disappointed purchaser may revisit the economics of a completed bargain, but whether Nintendo may retain both the consumer-funded portion of those tariff costs and the corresponding government reimbursement.

[7] *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001), is not to the contrary. There, the Ninth Circuit held that consumers suffered no constitutional injury merely because tobacco manufacturers increased prices to pass through settlement costs. It did not involve a manufacturer's later recovery of those same costs from a third party or an unjust-enrichment claim based on retention of both recoveries. *Austin v. Ettl*, 171 Wn. App. 82, 91–92 (2012), is similarly distinct. The sellers there fully disclosed the potential future encumbrances on the property, the buyer could readily investigate their potential cost, and there was no subsequent collateral recovery by the sellers.



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

Nintendo's fixed-price risk cases are inapposite because those decisions hold only that a buyer under a fixed-price contract bears the risk of adverse market movements. *See N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986); *Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330 (4th Cir. 1987). But there is no fixed-price contract here allocating to consumers the risk of a tariff refund and Nintendo elsewhere denies that any contract governs. The triggering event is not a market fluctuation that both parties knowingly assumed, but Nintendo's recovery of the specific unlawful charge it embedded in its prices. No consumer agreed to bear the risk that Nintendo would recover a refund and keep it. A risk that was never allocated cannot have been assumed.

Nintendo's final point, that it bore the "brunt" of the tariffs as the importer of record and thus it keeping them is not equitable. Mot. at 11. This does not persuade. Nintendo's status as importer of record establishes that it remitted the duties to the government in the first instance; it does not establish who ultimately bore their economic burden. *Cf. United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386, 402 (1934) (recognizing, in applying a statutory tax-refund provision, that where a taxpayer "has shifted the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest"). Indeed, the Supreme Court has recognized that determining whether a business cost has actually been passed on to customers entails a "highly sophisticated theoretical and factual inquiry." *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 47 (1990). The Complaint expressly alleges that Nintendo passed at least part of those tariff costs through to consumers in higher retail prices and that their economic burden was borne, "in whole or in part," by Plaintiffs and the Class. Compl. ¶¶ 35–39, 44, 47, 49, 56–57. Whether, and to what extent, Nintendo absorbed the tariff costs or shifted them to consumers is therefore a factual dispute that cannot be resolved on the pleadings.

## II. Plaintiffs State Claims for Money Had and Received.

Nintendo moves to dismiss Plaintiffs' claims for money had and received "for the same reasons" it moves to dismiss their claims for unjust enrichment. Mot. at 11. As an initial matter,



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

however, Nintendo cites no case applying the voluntary payment doctrine to causes of action for money had and received. *See generally id.*

Moreover, Nintendo improperly narrows the bases on which a cause of action for money had and received may be pled. *Id.* at 11-12. Such a claim exists where the defendant has received money that "in equity and good conscience, should have been paid to the plaintiff, and under such circumstances that he ought, by the ties of natural justice, to pay it over." *Seekamp v. Small*, 39 Wn. 2d 578, 584 (1951). The Court in *Coast Trading*, the primary case relied on by Nintendo, held that the doctrine for money had and received applies "only if plaintiff's claim is based upon some recognized equitable principle such as mistake, coercion, duress, fraud, illegality of contract, impossibility of performance or failure to perform a fiduciary duty." *Coast Trading Co.*, 21 Wn. App. 896 at 902–03. Properly read, *Coast Trading* recognizes a broader set of equitable principles than Nintendo's Motion advocates. *Coast Trading* also frames the ultimate equitable question as whether the defendant "holds a specific fund which it acquired in a manner which would render its retention unconscionable." *Coast Trading Co.*, 21 Wn. App. at 903. Here, Plaintiffs have pleaded the existence of such a fund. Specifically, Plaintiffs pleaded that Nintendo's President stated that tariffs were treated as "as a part of the cost and incorporate[d] them into the prices[s]" of Nintendo's goods (¶ 44); Nintendo passed on tariff costs to consumers through higher retail prices (¶¶ 41-42, 44-49); Nintendo expects to receive reimbursement for the same tariff costs it already passed through to consumers (¶¶ 56–57, 79); and Nintendo has retained, or stands to retain, both the tariff costs it collected from its customers and the reimbursement for those costs from the government (¶¶ 56–57, 79–82).

Nintendo's reliance on *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 618–19 (2009), is also misplaced. Mot. at 12. There, the plaintiff "failed to argue the merits of his claim for money had and received beyond naming it at trial and stating its relation to conversion," and thus identified no equitable principle supporting recovery. *Id.* at 618. Plaintiffs do so here. Washington recognizes that the common-law action variously described as restitution,



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

quasi contract, or money had and received "employs unjust enrichment as an independent basis of substantive liability." *Davenport v. Washington Educ. Ass'n*, 147 Wn. App. 704, 725 (2008). And critically, restitution does not require that the defendant wrongfully receive the money in the first instance; it is enough that subsequent circumstances render its continued retention unjust. *Id.* at 725–35. Indeed, *Davenport* recognized that an initially lawful transfer may become unjust to retain when later events deprive that transfer of its original justification. *Id.* at 729–35. That is Plaintiffs' theory here: Nintendo's initial collection of the purchase price is not itself the basis for Count II; the inequity arises from Nintendo's alleged retention of the tariff-related amounts passed through to consumers while also obtaining reimbursement from the government for the corresponding tariff costs. ¶¶ 44, 49, 56–57, 79–82.

Nintendo's reliance on *Kraft v. Spencer Tucker Sales, Inc.*, 39 Wn.2d 943, 950 (1952), and *Bayley v. Lewis*, 39 Wn.2d 464, 470 (1951), is likewise misplaced. Mot. at 12. Plaintiffs do not allege a failure of consideration, much less contend that they received no value for their purchases. Failure of consideration is simply one circumstance that may support an action for money had and received; it is not an element of the claim. *See Coast Trading Co.*, 21 Wn. App. at 902–03 (identifying multiple recognized equitable principles supporting the action). Plaintiffs instead allege that Nintendo's retention of the tariff-related portion of consumer payments becomes inequitable when Nintendo also obtains reimbursement for the corresponding tariff costs from the government. ¶¶ 49, 56–57, 79–82. That Plaintiffs received the Nintendo products they purchased therefore does not resolve whether Nintendo may retain the alleged duplicative recovery.

Finally, Nintendo's suggestion that "Plaintiffs themselves acknowledged that Nintendo's pricing decisions did not include any direct pass-through of tariff costs to consumers" not only misreads the Complaint paragraphs it cites, it ignores allegations included elsewhere in Plaintiffs' pleading. ¶¶18, 19, 39, 40-49, 56–57, 79. The Court should not endorse this factual attack on Plaintiffs' claims at the motion to dismiss stage.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

### III. Plaintiffs State Claims under Washington's Consumer Protection Act.

Nintendo contends that Plaintiffs' Washington CPA claim fails because they do not plausibly allege that Nintendo's conduct was unfair or deceptive under the "substantial-injury test." Mot. at 13-19.[8] The "substantial-injury test" asks whether the challenged conduct (1) causes or is likely to cause substantial injury to consumers, (2) that consumers cannot reasonably avoid, and (3) that is not outweighed by countervailing benefits to consumers or competition. *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 454–59, 463–64 (2024).

#### A. Nintendo's Unfair and Deceptive Practices Caused Substantial Consumer Injury.

Nintendo's first attack is that Plaintiffs have not alleged any injury, let alone a substantial one. Mot. at 14-17. This is belied by the Complaint's allegations. A substantial injury may arise from "a small harm to a large number of people[.]" *Federal Trade Commission v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010). Nintendo's "higher prices" argument is simply wrong: a monetary overcharge (*i.e.*, paying more for a product than the consumer otherwise would have paid) is "plainly a harm under the CPA." *Taylor v. Amazon.com, Inc.*, No. 2:24-cv-00169-MJP ,2025 WL 104381, at *6 (W.D. Wash. Jan. 15, 2025). Substantial injury is adequately alleged where allegations support that consumers paid higher prices for goods and the challenged conduct had widespread effects. *Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 461, 553 P.3d 626, 641 (2024). *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017) (finding substantial injury where inadequate data-security measures foreseeably harmed thousands of consumers and card issuers).

---

[8] Nintendo does not challenge the adequacy of the trade-or-commerce, public-interest, and causation elements of Plaintiffs' CPA claim. To be sure, the Complaint alleges that Nintendo's nationwide sales and pricing occurred in trade or commerce, that the practice affected hundreds of thousands or millions of consumers, and that Nintendo's tariff pass-through directly caused Plaintiffs to pay the challenged price increases. ¶¶ 58–67, 85–95. CPA causation is satisfied because, but for Nintendo's alleged practice, Plaintiffs would not have suffered the tariff-related economic injury. *Schnall v. AT&T Wireless Services, Inc.*, 171 Wn.2d 260, 278 (2011). The public-interest element is also satisfied because the challenged conduct has the capacity to injure other persons. *See* RCW 19.86.093(3)(c); *RL Liquidators LLC v. Amazon.com Services LLC*, No. 2:24-cv-02096-JHC, 2026 WL 787664, at *8 (W.D. Wash. Mar. 20, 2026).



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

Here, each Plaintiff alleges that they purchased Nintendo products whose prices were increased to account for tariffs, paid the resulting higher price, and would not have paid that tariff-related increment absent Nintendo's pass-through. ¶¶ 18–19. Those allegations are supported by Nintendo's own public explanation that, when tariffs are imposed, Nintendo's "basic policy" is to "recognize them as a part of the cost and incorporate them into the price," as well as the specific accessory and hardware price increases alleged during the tariff period. ¶¶ 41–48. The same practice allegedly affected a class numbering in the hundreds of thousands or millions. ¶¶ 58–67. Even if the tariff component of any individual purchase was modest, its alleged imposition across Nintendo's customer base constitutes substantial consumer injury.

Nintendo's reliance on *Montes v. SPARC Group LLC*, 6 Wn.3d 321, 331 (Wash. 2026) is misplaced. In *Montes*, a consumer bought a product based on a misrepresentation about its "discounted price, comparative price, or price history." *Id.* at 338–39. The plaintiff purchased leggings for $6 after the retailer represented that their regular price was $12.50. *Id.* at 324–25. She received the exact fungible leggings advertised, identified no objective difference in quality, composition, usefulness, or any other product characteristic, and—critically—conceded that their actual market value was approximately the $5-to-$6 price she paid. *Id.* at 333–38. Because the plaintiff's own allegations established no objective economic shortfall, her claimed injury was the disappointed expectation that she had obtained a larger bargain. *Id.*

Here, Plaintiffs allege that the tariffs imposed a specific, identifiable cost that Nintendo built into the prices consumers ultimately paid. Nintendo acknowledged that it incorporated tariff costs into its prices. ¶¶ 43–44, Plaintiffs paid the resulting increases, ¶¶ 18–19, 39, 47–49, and Nintendo now seeks reimbursement of those same duties from the government, ¶¶ 50–57. Unlike *Montes*, Plaintiffs' alleged loss is not the subjective disappointment of believing they obtained a better bargain than they actually received. Plaintiffs allege a discrete tariff-related monetary component that Nintendo itself treated as a cost, incorporated into its pricing, and now seeks to recover from a third party. ¶¶ 18–19, 39, 43–57, 92, 95. That alleged component is capable of



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

objective economic measurement and does not depend on a consumer's subjective perception of value. At minimum, if the Court concludes that *Montes* requires more explicit allegations concerning the objective economic effect of the tariff-related increment on the products Plaintiffs purchased, Plaintiffs should be granted leave to amend to plead those facts with greater specificity.

Nintendo also isolates the wrong conduct when it argues that Plaintiffs contend the tariff-related price increases themselves were unfair. Mot. at 15. Plaintiffs do not claim that Nintendo was prohibited from adjusting prices in response to then-existing increased costs. The alleged unfairness is that Nintendo passed those tariff costs through to consumers, then sought refunds of the same duties from the government without committing to return the consumer-paid portion. ¶¶ 7–9, 18–19, 35–57. In other words, Nintendo seeks to recover the same tariff expense once through higher retail prices and again through government refunds, while retaining both. That alleged double recovery—not Nintendo's initial pricing decision—is the practice challenged under the CPA. Nor does Nintendo's appeal to the 'cost of doing business' change the result. Even accepting *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*'s observation that businesses commonly pass increased costs to consumers through higher prices, 256 F.3d 879, 884–85 (9th Cir. 2001),[9] any justification for Nintendo's initial tariff-related price increases does not justify retaining both the consumer-paid tariff component and a government refund of the same duties.

Next, Nintendo characterizes the Complaint as imposing a duty to predict the Supreme Court's ruling and disclose a future tariff-refund lawsuit before each purchase. Mot. at 15–16. That reduces Plaintiffs' theory to a caricature. Fairly read, the Complaint alleges an unfair *course of conduct*: Nintendo incorporated tariff costs into consumer prices, later sought reimbursement

[9] *Table Bluff* addressed Article III standing for tribes asserting a due-process injury from cigarette price increases following a settlement between tobacco companies and state governments. *Id.* at 884–85. It did not apply Washington's CPA or consider what Nintendo is alleged to have done here—retaining a government reimbursement for the same cost it allegedly already passed through to consumers.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

of those same duties, and seeks to retain that recovery without returning the corresponding amounts to the consumers who bore them. ¶¶ 35–57, 89–95. Paragraph 89's reference to Nintendo's failure to disclose its intent to seek refunds is one part of that broader course of conduct.

To the extent Nintendo contends that the Complaint cannot support deception in the alternative, that argument also fails. Mot. at 15 n. 7.[10] A practice is deceptive if it is likely to mislead a reasonable consumer; neither intent to deceive nor actual deception is required. *Panag v. Farmers Insurance Co. of Washington*, 166 Wn.2d 27, 47–50 (2009). Even a technically accurate statement may be deceptive if it creates a misleading overall impression. *Eng v. Specialized Loan Servicing*, 20 Wn. App. 2d 435, 445–46 (2021). Nintendo publicly stated that it treated tariffs as costs and incorporated them into its prices but failed to disclose how it would treat the corresponding consumer-paid amounts if those costs were later refunded. ¶¶ 44, 49–57, 88–89. Plaintiffs' theory is not that Nintendo had to disclose its legal strategy; it is that Nintendo's statement that tariffs were incorporated into prices was misleading without any disclosure that Nintendo might later recover those same duties and retain those amounts.[11]

Nintendo also argues that tariffs were only one of several pricing inputs and that it did not increase every price by the precise amount of the applicable duty. Mot. at 16–17. That does not defeat the claim. The Complaint alleges that Nintendo passed through at least part of its tariff costs, selectively raised prices on affected products, and incorporated tariffs into the prices

---

[10] However, should the Court find that Plaintiffs' unfairness theory is adequately pleaded, it need not address the separate deceptive theory. *See Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1163 (W.D. Wash. 2017) ("The court need not determine whether [plaintiff] has adequately alleged a 'deceptive act' under the CPA because [plaintiff] need not allege both an 'unfair act' and a 'deceptive act' to state a CPA claim.") (citing *Klem v. Washington Mutual Bank*, 176 Wn.2d 771 (2013)).

[11] Neither of Nintendo's cases on this point are persuasive. *Behnke v. Ahrens* affirmed summary judgment because the plaintiffs failed to produce evidence that an attorney's nondisclosure was repeated or likely to recur, not because the omission lacked the capacity to deceive. 172 Wn. App. 281, 295–96 (2012). *Daugherty v. American Honda Motor Co., Inc.* is likewise distinguishable because it applied California law to a standalone omission where the manufacturer made no representation concerning the allegedly concealed characteristic. 144 Cal. App. 4th 824, 835 (2006). Here, Nintendo affirmatively stated that tariffs were incorporated into its prices, and Plaintiffs allege that its failure to disclose how it would treat that price component if refunded contributed to a misleading overall impression.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

Plaintiffs and Class members paid. ¶¶ 39–49. The extent to which particular price increases reflected tariffs rather than the other costs Nintendo identifies (memory, labor, shipping) is a matter for discovery. This argument bears on proof and the amount of recovery, not whether Plaintiffs have plausibly alleged an injury under the CPA. *See Panag*, 166 Wn.2d at 57–58 (explaining that CPA injury is distinct from the ultimate measure of damages and need not be quantified at the pleading stage). Nor does it matter that Nintendo never promised consumers a rebate. Mot. at 16. Again, Plaintiffs' CPA claim rests on Nintendo's allegedly unfair course of conduct, not on the breach of a hypothetical contractual right.

**B. Nintendo's Unfair Practices Have No Countervailing Benefit.**

Nintendo next argues that the ability to price goods commensurate with costs, together with the certainty provided by a final sales price, supply the necessary countervailing benefit to consumers and competition. Mot. at 17-18. It then takes that premise to an unwarranted extreme, warning that a contrary result would cause businesses to shutter or withdraw from the market. *Id.*

Again, Nintendo misses the mark. Nintendo may have had a legitimate reason to account for a tariff while it remained an actual cost. That much is true. But that rationale does not explain why Nintendo should retain both the tariff component allegedly collected from consumers and a government reimbursement of the same duty. ¶¶ 49–57. Plaintiffs do not ask the Court to hold that a company may never adjust prices in response to increased costs, or that every later reduction in an input cost requires retroactive repricing. The alleged unfairness lies in Nintendo's recovery of a particular, identifiable cost from two sources while the consumers who funded the first recovery remain out of pocket.

Nintendo relies on Justice Keenan's concurrence in *Greenberg*, which recognized that price increases tied to increased costs may provide countervailing benefits. 3 Wn.3d at 486–87 (Keenan, J., concurring). But the majority adopted the substantial-injury framework and treated



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

the inquiry into countervailing benefits as case specific and dependent on the factual allegations. *Id.* at 459–63. Nintendo's asserted benefits therefore are not a basis for dismissal.[12]

Nintendo cites *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 53–61 (1987), for the unremarkable proposition that legitimate business conduct is not unfair under the CPA, and cites *Dagher v. Saudi Refining, Inc.*, 369 F.3d 1108, 1127 (9th Cir. 2004), for the equally unobjectionable point that setting prices is central to business operations. But neither case applied Washington's substantial-injury framework nor addresses the conduct alleged here—whether a company's efforts to retain both the tariff costs passed through to consumers and refunds of those same duties are actionable under the CPA. ¶¶ 44, 47–57, 89–95.

**C. Consumers Could Not Reasonably Avoid the Alleged Injury.**

Nintendo's final CPA argument is that Plaintiffs could have avoided the alleged injury by declining to purchase the affected items, or by buying them from another retailer or manufacturer. Mot. at 18-19. Reasonable avoidability turns on whether consumers had a "free and informed choice," including reason to anticipate the impending harm and a practical means to avoid or mitigate it. *Greenberg*, 3 Wn.3d at 460–62; *Neovi*, 604 F.3d at 1158. Nintendo's generic announcements that "market conditions" could affect prices did not provide that choice. *See* Mot. at 18. A purchaser could see the posted total price, but could not determine what portion reflected an IEEPA duty, how Nintendo allocated tariffs among the multiple inputs it now says informed its prices, which refund would correspond to the purchase, or whether Nintendo would retain the reimbursement of those tariffs after already having recovered that component from consumers. Those facts were wholly within Nintendo's control and not available to Plaintiffs or consumers. Simply put, Plaintiffs could not reasonably avoid a charge they could not identify.

Nintendo's reliance on *Taylor v. Amazon.com, Inc.*, No. 2:24-cv-00169-MJP 2025 WL 104381 (W.D. Wash. Jan. 15, 2025), highlights what is missing here. In *Taylor*, consumers could

[12] Justice Keenan's concurrence itself explained that the countervailing-benefits prong "requires a fact finder to analyze factors such as increased costs within the distribution chain [and] the burden on business." *Id.* at 486–87.



EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

view and select competing offers for the same item—including the allegedly lower-priced offers—within the same purchasing interface. *Id.* at *6. Similarly, in *Davis v. HSBC Bank Nevada, N.A.*, the challenged fee was disclosed in advance and remained refundable for ninety days. 691 F.3d 1152, 1168–69 (9th Cir. 2012). Nintendo identifies no comparable disclosure or practical means of avoiding the embedded tariff charge. Indeed, Plaintiffs lacked the information necessary to identify, compare, or avoid the tariff component embedded in Nintendo's prices. ¶¶ 40–45, 49–57.

Nintendo's other cases fare no better. *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) did not establish a "highly restricted market" requirement; it found injury unavoidable because consumers lacked a practical ability to shop or bargain over the challenged terms. *Id.* at 976–77. Nor did *Greenberg* hold that necessity or monopoly is required. Product scarcity and shelter-in-place orders supported nonavoidability on the facts there, but the governing inquiry remains whether consumers had a free and informed means of avoiding the injury. 3 Wn.3d at 460–62. Here, they did not.

**IV. Plaintiffs State a Claim under the Declaratory Judgment Act.**

Nintendo asserts that Plaintiffs' claims under the Declaratory Judgment Act ("DJA") fail because their DJA claims rest upon Plaintiffs' success on their other claims. Mot. at 19. For the reasons explained above, Plaintiffs' claims should be sustained under Rule 12(b)(6) Therefore, Plaintiffs' DJA claim should be sustained, too.

**V. Any Dismissal Should Be With Leave to Amend.**

Nintendo's Motion should be denied. However, if the Court orders dismissal of any claim, it should be without prejudice and with leave to amend. This is the first complaint, Nintendo's arguments turn largely on pleading specificity, and any perceived defects could be (and should be allowed to be) cured by amendment. *See* Fed. R. Civ. P. 15(a)(2); s*ee also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted unless amendment would be



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

futile); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Therefore, if the Court orders dismissal of any claim, Plaintiffs respectfully request leave to amend.

**CONCLUSION**

For these reasons, the Court should DENY Nintendo's Motion. To the extent that the Court grant's Nintendo's motion (which it should not), Plaintiffs respectfully request leave to amend.

Dated: August 19, 2026

Respectfully submitted,

By: */s/ M. Anderson Berry*
M. Anderson Berry, WSBA No. 63160

By: */s/ Timothy Emery*
Timothy Emery, WSBA No. 34078

By: */s/ Brook Garberding*
Brook Garberding, WSBA No. 37140

Gregory Haroutunian*
Brandon P. Jack*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*emeryt@emeryreddy.com*
*brook@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

By: */s/ Jason T. Dennett*
Jason T. Dennett (WSBA No. 30686)
**MILBERG PLLC**
1700 7th Ave., Ste. 2100
Seattle, WA 98101
Tel: (866) 252-0878
Email: *jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100

Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Terence R. Coates*
Dylan J. Gould*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications forthcoming

**CERTIFICATE OF SERVICE**

I, M. Anderson Berry, hereby certify that on August 19, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action. I certify that this memorandum contains 7,521 words, in compliance with the Local Civil Rules.

*<u>/s/ M. Anderson Berry</u>*
*M. Anderson Berry*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711