HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY HOFFERT and PRASHANT SHARAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NINTENDO OF AMERICA INC.,<br><br>Defendant. | Case No. 2:26-cv-01360-RAJ<br><br>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>NOTE ON MOTION CALENDAR:<br><br>SEPTEMBER 4, 2026 |



**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiff Fails to State a Claim for Unjust Enrichment. .......... 2

A. Plaintiff voluntarily paid a fixed price with full knowledge of the relevant facts. .......... 2

B. Nintendo's enrichment is not unjust. .......... 4

II. Plaintiff Fails to State a Claim for Money Had and Received. .......... 6

III. Plaintiff Fails to State a CPA Claim. .......... 7

A. Plaintiff alleges neither injury nor causation. .......... 7

B. Nintendo's conduct produced countervailing benefits. .......... 9

C. Plaintiff had a free and informed choice. .......... 10

IV. The Declaratory Relief Claim Fails with the Substantive Claims. .......... 11

V. Amendment Would Be Futile. .......... 11

CONCLUSION .......... 11




STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601 (2009) ..... 7

*Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38 (1987) ..... 10

*City of Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022) ..... 11

*Coast Trading Co. v. Parmac, Inc.*, 21 Wash. App. 896 (1978) ..... 7

*Cox v. O'Brien*, 150 Wash. App. 24 (2009) ..... 5

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) ..... 9

*Davenport v. Washington Education Association*, 147 Wash. App. 704 (2008) ..... 7

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ..... 10

*Ehsani v. McCullough Family P'ship*, 160 Wash. 2d 586 (2007) ..... 6

*Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089 (9th Cir. 2015) ..... 4

*Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash. App. 719 (1987) ..... 3, 5

*Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 456 (2024) ..... 9, 10, 11

*Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) ..... 5

*Hawkinson v. Conniff*, 53 Wash. 2d 454 (1959) ..... 3




STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
162 Wash. 2d 59 (2007) ..... 9

*Langham-Hill Petroleum Inc. v. S. Fuels Co.*,
813 F.2d 1327 (4th Cir. 1987) ..... 2

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ..... 11

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*,
496 U.S. 18 (1990) ..... 6

*Montes v. SPARC Grp. LLC*,
6 Wash. 3d 321 (2026) ..... 8

*N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
799 F.2d 265 (7th Cir. 1986) ..... 2

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
161 Wash. App. 474 (2011) ..... 2

*Speckert v. Bunker Hill Ariz. Min. Co.*,
6 Wash. 2d 39 (1940) ..... 3, 4

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,
256 F.3d 879 (9th Cir. 2001) ..... 4

*Taylor v. Amazon.com, Inc.*,
2025 WL 104381 (W.D. Wash. Jan. 15, 2025) ..... 10

*United States v. Jefferson Electric Manufacturing Co.*,
291 U.S. 386 (1934) ..... 5, 6

*Veridian Credit Union v. Eddie Bauer, LLC*,
295 F. Supp. 3d 1140 (W.D. Wash. 2017) ..... 11

*Young v. Hoagland*,
298 P. 996 (Cal. 1931) ..... 4

**Statutes**

RCW 19.86.920 ..... 10

Revenue Act of 1928, § 424 ..... 5



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

## INTRODUCTION[1]

In his opposition brief, Plaintiff concedes that his purchases of Nintendo products were lawful at the time of sale, and he disclaims any suggestion that "the purchases themselves became retroactively unlawful." Dkt. 33 ("Opp'n") at 7. Plaintiff concedes Nintendo's decision "to incorporate then-existing tariff costs into its prices, standing alone," was not unjust, and that Nintendo was permitted to "adjust[] prices in response to then-existing increased costs." *Id.* at 10, 16. And Plaintiff concedes Nintendo did not "charge[] too much" for the products he purchased and that he received value from them. *Id.* at 4, 13. Those concessions resolve this case. Plaintiff cannot recover damages for voluntarily entering into transactions he concedes were lawful and fair at the time those transactions took place.

Plaintiff insists he is not asking this Court to "reprice a previously completed sale" and that "[t]he agreed purchase price remains the purchase price." *Id.* at 4, 7. The problem, he now says, is Nintendo's later receipt of what he calls "a distinct benefit from a third party," tariff refunds from the government, which Plaintiff brands a "double recovery." *Id.* at 4, 10. But the only "benefit" Plaintiff asserts he conferred on Nintendo *is* the purchase price, and the only relief Plaintiff seeks is the return of part of that same purchase price—the portion attributable to tariff-related price-increases. A partial refund of the purchase price is a repricing, no matter what Plaintiff chooses to call it. And Washington law does not require sellers to reprice transactions based on events that were uncertain at the time of sale.

Plaintiff's theory that *he* unjustly enriched Nintendo based on *the government's* later payment to Nintendo suffers from other insuperable obstacles. Plaintiff cites no case, from Washington or anywhere else, holding that a buyer who voluntarily paid an agreed price for goods he received and kept may claim a share of the seller's later recovery from a third party. Every

[1] Plaintiff Gregory Hoffert voluntarily dismissed his claims without prejudice on August 19, 2026. Dkt. 34. The sole remaining Plaintiff is Prashant Sharan. Mr. Hoffert's dismissal moots Nintendo's motion to compel Mr. Hoffert's claims to arbitration, but Nintendo continues to reserve its right to move to compel arbitration of Mr. Sharan's claims if discovery reveals that they are arbitrable.





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

restitution case Plaintiff musters involved a payment compelled by law or extracted under threat. Plaintiff's new theory also fails on causation: Nintendo's collection of refunds, which took place *after* Plaintiff's alleged transaction, could not have caused the injuries he attributes to that earlier transaction. And as a practical matter, the retail economy could not function if events that postdate a sale, involving different money and a different payor, could retroactively render a sale unjust.

This Court should dismiss Plaintiff's lawsuit with prejudice.

## ARGUMENT

### I. Plaintiff Fails to State a Claim for Unjust Enrichment.

#### A. Plaintiff voluntarily paid a fixed price with full knowledge of the relevant facts.

Unjust enrichment is a gap-filling doctrine that has no application where a contract governs the parties' relationship. *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 490 (2011); *see* Dkt. 21 ("Mot.") at 7.[2] Plaintiff claims that "there is no fixed-price contract here" and that no contractual term governs entitlement to a later tariff refund. Opp'n at 4, 11. But a sale of goods *is* a fixed-price contract. For a transaction at the advertised price, the parties allocate every cost input and pricing risk at the time of sale; the seller bears the downside if its costs rise and keeps the upside if they fall. *See N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 275 (7th Cir. 1986) ("The normal risk of a fixed-price contract is that the market price will change."). There is no "gap" for equity to fill because the price term leaves nothing unallocated. "If fixed-price contracts can be avoided due to fluctuations in price, then the entire purpose of fixed-price contracts, which is to protect both the buyer and the seller from the risks of the market, is defeated." *Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330 (4th Cir. 1987).

Plaintiff responds that "[a] risk that was never allocated cannot have been assumed." Opp'n at 11. That claim refutes itself. The risk of tariffs rising or falling after purchase—including the possibility that they would later be invalidated and refunded—was allocated the moment the parties

[2] Unless noted, all citations and internal quotation marks are omitted from case citations.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

agreed on a price. Indeed, Plaintiff appears to concede that he would not have a basis to request a refund if "an *ordinary* input cost later . . . proved different from what the parties anticipated," *id.* at 7 (emphasis added), but he never explains why tariffs are any different. Plaintiff does not explain why tariffs, among all the costs reflected in a retail price, should be subject to a one-way ratchet under which sellers bear every downside risk yet owe rebates whenever a risk resolves in their favor.[3]

The voluntary payment doctrine independently bars Plaintiff's claim. "[M]oney voluntarily paid under a claim of right to the payment, and with knowledge by the payor of the facts on which the claim is based, cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance." *Hawkinson v. Conniff*, 53 Wash. 2d 454, 458 (1959). Plaintiff's own authority is in accord: absent fraud or improper conduct by the payee, one who pays "under a mistake of law, or in ignorance of law, but with full knowledge of all the facts" cannot recover the payment, even in "hard cases," and those "in which it is against conscience for the payee to retain the payment." *Speckert v. Bunker Hill Ariz. Min. Co.*, 6 Wash. 2d 39, 53 (1940). Although Plaintiff attempts to frame voluntariness as a jury issue, Opp'n at 5–6, that is wrong: "The question whether a payment is voluntary or involuntary is one of law where the facts are undisputed[.]" *Speckert*, 6 Wash. 2d at 52.

Here, the relevant facts are undisputed and establish that the transaction was not "involuntary." Plaintiff alleges that he chose to buy Nintendo's products at the advertised retail prices, Compl. ¶ 19, and that Nintendo publicly disclosed that tariffs were driving those prices, *id.* ¶¶ 40–48. Plaintiff does not dispute that he knew what he was paying and what he was receiving. He voluntarily entered into that deal and cannot now undo it. This case is nothing like what *Speckert* says is involuntary, such as stockholders recovering contested corporate assessments they paid under

---

[3] Plaintiff does not specify whether he purchased directly from Nintendo or from a third-party retailer. Either way, the claim fails. A direct purchase from Nintendo is governed by the contract of sale. A retailer purchase confers any alleged benefit on the retailer, leaving Nintendo at most "a mere incidental beneficiary of the [transaction]." *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash. App. 719, 732–33 (1987); Mot. at 9–10.





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

threat of forfeiting their shares. *Speckert*, 6 Wash. 2d at 54, 59 (discussing *Young v. Hoagland*, 298 P. 996, 998 (Cal. 1931)). Plaintiff does not allege that he was compelled to buy, that any term of sale was hidden from him, or that he objected to the price he paid. His purchase was therefore voluntary as a matter of law. *See id.* at 52.

The apparent "full knowledge" that Plaintiff insists should have been made available—a detailed accounting of whether and to what extent tariffs were embedded in each particular price, Opp'n at 5–6, 19—is knowledge retail consumers never have. On Plaintiff's reading, *all* retail purchases would be involuntary, because no seller publishes its proprietary pricing formulas. That cannot be the law. *Cf. Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092–93 (9th Cir. 2015) (it is a "settled premise that a seller generally has no duty to disclose internal pricing policies or its method for valuing what it sells"). Further, the absence of this detailed accounting was irrelevant to Plaintiff's purchase decision. Regardless of whether $1 or $3 of the price could be traced to the tariffs, Plaintiff knew exactly how much he was paying for the product and knew that the sales price was final, regardless of the outcome of unpredictable future events.

Plaintiff finally argues that he could not have known that the Supreme Court would strike down the tariffs or that Nintendo would seek and retain refunds. *See id.* at 5. Neither could Nintendo. Knowledge is measured at the time of payment, and a fact that did not yet exist cannot be a fact the payor lacked. When Plaintiff made the purchase, the tariffs were the law, and Nintendo paid them.

**B. Nintendo's enrichment is not unjust.**

Plaintiff concedes that Nintendo's decision to account for tariff costs in its prices was, "standing alone," not unjust. Opp'n at 10. Rightly so. "Price increases are a common business practice to pass on higher costs." *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001). Nintendo, as the importer of record, bore the tariffs in the first instance. Nintendo remitted them upfront, carried them on its books, absorbed the risk that the legal challenges would fail, and then litigated to recover its own tariff payments following *Learning Resources*. *See* Mot. at 10–11.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Unable to dispute the fairness of the transactions he voluntarily entered into, Plaintiff's theory is that a concededly fair sale became unjust when Nintendo later received "a distinct benefit from a third party," *i.e.*, the government's refund. Opp'n at 10. That theory fails. First, unjust enrichment measures the benefit the *plaintiff* conferred; the enrichment must be unjust "as between the two parties to the transaction." *Farwest Steel*, 48 Wash. App. at 732; *see Cox v. O'Brien*, 150 Wash. App. 24, 37 (2009). The only benefit Plaintiff alleges he conferred on Nintendo is the purchase price, and Plaintiff now concedes that price was properly charged and properly retained. *See* Opp'n at 7 ("The agreed purchase price remains the purchase price."). Any tariff refunds Nintendo receives from the government, by Plaintiff's own description, are a "distinct benefit from a third party." Opp'n at 10. Plaintiff cites no authority entitling a consumer to recover a benefit conferred on Nintendo by a third party.[4]

Second, if nothing about the transaction was unjust when it closed, a later event involving no conduct toward Plaintiff, and no money from Plaintiff, cannot reach back and make it unjust. Plaintiff's suggestion that *Learning Resources* has retroactive effect does not change this conclusion. *See* Opp'n at 7 (citing *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993)). Retroactivity determines Nintendo's rights against the government, but it does not rewrite private bargains. In other words, the fact that *Learning Resources* retroactively invalidated the IEEPA tariffs does not retroactively entitle Plaintiff to a refund of the money he paid.

Plaintiff's tax-refund cases—where courts treat a purchaser who has paid a passed-through tax as shouldering the economic burden of the tax—affirmatively refute Plaintiff's theory. In *United States v. Jefferson Electric Manufacturing Co.*, the fact that the tax was passed through mattered only because Congress said so; Section 424 of the Revenue Act of 1928 expressly conditioned any refund on the manufacturer showing that it had not collected the tax from purchasers, had returned

[4] This is especially true if Plaintiff, in fact, purchased his product from a third-party retailer. Retailers set their own prices for any Nintendo good they carry. Any payment of a purchase price from Plaintiff to the retailer could have only benefited the retailer. *See* Mot. at 9.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

it to them, or had bonded to distribute the refund. 291 U.S. 386, 391–92 (1934). The Court took care to note that, before that statute, the manufacturer *taxpayer* had "a right to have it refunded without any showing as to whether he bore the burden of the tax or shifted it to the purchasers." *Id.* at 401. And even under the statute, the refund still went to the manufacturer, not the purchaser.

*McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), is stronger still for Nintendo. There, the Supreme Court described *Jefferson Electric* as enforcing "a statutorily created pass-on defense." *Id.* at 47–48. It rejected the pass-on argument before it, holding that the government "could not refuse to provide a refund based on sheer speculation that a 'pass-on' occurred." *Id.* at 46. No comparable pass-through condition attaches to the IEEPA refunds, and Plaintiff cites nothing importing one into Washington common law. Moreover, Plaintiff's reliance on *McKesson* confirms that the refunds he seeks are completely un-administrable. As Plaintiff notes, "determining whether a business cost has actually been passed on to customers entails a 'highly sophisticated theoretical and factual inquiry.'" Opp'n at 11 (quoting *McKesson*, 496 U.S. at 47). That is precisely why courts do not reopen completed sales to perform that inquiry. *See* Mot. at 8.

Finally, labeling this transaction "unjust" would call into doubt a core principle of retail transactions: completed purchases are final. Plaintiff insists his theory is confined to tariffs, but he offers no principled basis for that limitation. Sellers routinely price to reflect the risk of nonpayment; on Plaintiff's theory, every such sale is unfair. If the seller is paid, it kept a premium for a risk that never materialized; if it is not paid, the buyer got a discount the seller would never have otherwise offered. Someone is always unjustly enriched. The Court should not go down that path.

## II. Plaintiff Fails to State a Claim for Money Had and Received.

The money-had-and-received claim fails for similar reasons. The doctrine requires Plaintiff to establish circumstances under which retention of a specific fund would "give offense to equity and good conscience." *Ehsani v. McCullough Family P'ship,* 160 Wash. 2d 586, 592 (2007). Washington confines those circumstances to "recognized equitable principle[s] such as mistake, coercion, duress, fraud, illegality of contract, impossibility of performance or failure to perform a



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

fiduciary duty." *Coast Trading Co. v. Parmac, Inc.*, 21 Wash. App. 896, 902–03 (1978); *accord Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601, 618–19 (2009). No such equitable principle is even arguably relevant here. Plaintiff cites no case, and Nintendo is aware of none, that sustained a claim for money had and received by a buyer who voluntarily paid an agreed price and received and kept exactly what he paid for.

*Davenport v. Washington Education Association*, 147 Wash. App. 704 (2008), does not assist Plaintiff. Plaintiff reads *Davenport* to hold that "it is enough that subsequent circumstances render [a transfer's] continued retention unjust." Opp'n at 13. But *Davenport* holds nothing so broad. The *Davenport* plaintiffs were nonunion public school employees whose employers were compelled by statute to deduct agency shop fees from their salaries and pay them to the union. 147 Wash. App. at 710–11. The court undid those transfers because they were "made under compulsion of law" subject to a statutory condition that the nonmembers affirmatively authorize the union's use of those fees, which they did not provide. *Id.* at 735. The *Davenport* court rejected the union's voluntary payment defense because "nothing shows that the plaintiffs paid voluntarily," as the money "was transferred . . . not because the plaintiff was voluntarily agreeing to pay, but because the transfer was compelled by" statute. *Id.* at 736–37. Here, Plaintiff's purchase was neither "made under compulsion of law"—no law compelled him to buy video games, consoles, or accessories—nor subject to any statutory conditions. Instead, it was a voluntary purchase, which defeats his claim under *Davenport*'s reasoning.

**III. Plaintiff Fails to State a CPA Claim.**

**A. Plaintiff alleges neither injury nor causation.**

The Complaint pleads a single monetary loss: Plaintiff "paid inflated prices for goods subject to tariffs." Compl. ¶ 92. Nintendo's motion explained why that alleged loss is not cognizable. *See* Mot. at 14–17. Plaintiff tries to sidestep this result by relocating the alleged wrong to Nintendo's post-sale recovery of tariff refunds. *See* Opp'n at 15–16. The relocation does not save the claim. It





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

fails on injury for much the same reasons, and it exposes a second, independent defect: conduct occurring after Plaintiff's purchases cannot have caused the only loss he pleads.

Start with the loss the Complaint actually alleges. A consumer suffers no cognizable injury unless the product purchased was "objectively different from or worth less than the purchase price." *Montes v. SPARC Grp. LLC*, 6 Wash. 3d 321, 337 (2026). "[T]he market determines the fair market value" of a product. *Id.* at 334. "Without more, the mere fact of a retail transaction does not imply economic loss." *Id.* at 333. Plaintiff nowhere alleges that his purchases were defective, not as advertised, or worth less than he paid; he concedes he received the products he wanted at the price he agreed to pay. *See* Opp'n at 6–7. He occupies precisely the position he bargained for, and precisely the position he would occupy had the tariffs been upheld. *See* Mot. at 16–17.

Plaintiff attempts to distinguish *Montes* by asserting that the tariff increment is "specific, identifiable" and "capable of objective economic measurement." Opp'n at 15–16. But Plaintiff ignores *Montes*'s central holding: there can be no injury absent a plausible allegation that the plaintiff received something different from—and worse than—what he paid for. Every component of every retail price, whether labor, shipping, memory, or marketing, is capable of objective economic measurement. If measurability were injury, every cost input would support a CPA claim—precisely the result *Montes* forecloses by anchoring injury to the product's value against the price paid.

Plaintiff then insists he is not challenging Nintendo's pricing at all. *See* Opp'n at 4, 10. But that disclaimer forfeits the only injury the Complaint pleads. In any event, the relocated theory fails too. Nintendo's receipt of tariff refunds did not injure Plaintiff. To the extent the purported "injury" is Nintendo's failure to unilaterally convey a partial refund in connection with a completed, concededly fair sale, Plaintiff identifies no authority remotely suggesting this is an "injury." And to the extent the "injury" is Plaintiff's original payment of funds, Plaintiff's theory fails on causation. Nintendo did not file its refund action until March 6, 2026, after the alleged class period closed on February 24, 2026, and the Supreme Court did not rule on the case before it until February 20, 2026. *See* Compl. ¶¶ 4, 50, 67. Plaintiff does not allege a purchase on any particular date, let alone one



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

postdating those events. His own framing concedes the sequence, describing the refund recovery as a "later and distinct event." Opp'n at 6. Conduct that follows a payment cannot be its but-for cause. *See Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 82–84 (2007).[5]

Plaintiff's alternative "deception" theory fares no better. Plaintiff claims Nintendo's conduct was "deceptive" because it failed to disclose how it would treat a hypothetical refund of tariffs no court had yet invalidated. But Nintendo had no duty to preemptively develop a litigation strategy, much less disclose it to purchasers. Plaintiff insists his "theory is not that Nintendo had to disclose its legal strategy," but instead "that Nintendo's statement that tariffs were incorporated into prices was misleading without any disclosure that Nintendo might later recover those same duties and retain those amounts." Opp'n at 17. That is the same theory in different words. The only "disclosure" that could have cured Plaintiff's supposed misimpression is a disclosure of Nintendo's contingent litigation and refund strategy. Nintendo's failure to disclose this information is not "deceptive." *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("[A] failure to disclose a fact one has no affirmative duty to disclose" is not "likely to deceive anyone.").

Nor did Nintendo's purported deception injure Plaintiff. Plaintiff does not suggest Nintendo made any promise, express or implied, to *issue* refunds; whether Nintendo would later elect to sue the government was therefore entirely irrelevant to Plaintiff's purchase decision. Finally, Plaintiff's invented duty has no limiting principle; every disclosed cost input would be labeled "deceptive" unless sellers preemptively disclosed hypothetical future litigation strategy related to that input, deterring sellers from contesting unlawful government charges at all. *See* Mot. at 16.

**B. Nintendo's conduct produced countervailing benefits.**

The CPA claim independently fails because the challenged conduct benefits consumers and competition. *See Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 456 (2024). If the challenged

[5] Plaintiff notes that Nintendo did not separately contest causation. *See* Opp'n at 14 n.8. Nintendo had no occasion to; the complaint located the injury in the purchases themselves. Compl. ¶¶ 92, 95. Nintendo addresses causation now only because the opposition relocates the operative wrong to events after the sale.





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

practice is the pricing, Plaintiff has conceded its legitimacy by admitting that Nintendo was entitled to adjust prices in response to tariffs. *See* Opp'n at 10. The benefits of this practice are also concrete. Nintendo's modest, selective adjustments in 2025, which it made while it absorbed tariff costs on many products (including its recently released Nintendo Switch 2 console), kept the products consumers wanted available at attractive prices during a turbulent period, with public disclosure of the market conditions driving its decisions. *See* Compl. ¶¶ 40–45. Pricing to keep products commercially available is "reasonable in relation to the development and preservation of business," conduct the CPA "shall not be construed to prohibit." RCW 19.86.920; *see Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 54 (1987).

If the challenged practice is instead the pursuit and retention of tariff refunds, the benefits are stronger still. Treating completed sales as final supplies the certainty on which every buyer and seller depends and lets businesses price confidently rather than reserving against contingent liability for every cost that might later fall. *See Greenberg*, 3 Wash. 3d at 486–87 (Keenan, J., concurring); Mot. at 17–18. And importers are ordinarily the only parties with both the standing and the incentive to challenge unlawful tariffs. Plaintiff's rule would convert every successful challenge into class-action exposure, deterring the very suits that vindicated consumers' interests here by invalidating the tariffs in the first place.

**C. Plaintiff had a free and informed choice.**

Finally, Plaintiff's alleged injuries were reasonably avoidable. *See Greenberg*, 3 Wash. 3d at 456. Video game consoles, games, and accessories are quintessentially discretionary purchases. A consumer who thought the prices too high, or who preferred to await the outcome of the well-publicized tariff litigation, had "a free and informed choice." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). He could wait, shop elsewhere, or simply not buy. *See Taylor v. Amazon.com, Inc.*, 2025 WL 104381, at *6 (W.D. Wash. Jan. 15, 2025) ("[C]onsumers have a free



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

and informed choice to review the offers for a particular product," and they "have the means to avoid the harm by selecting a different offer or not purchas[ing] the product at all.").[6]

Plaintiff responds that consumers could not determine "what portion" of any price "reflected an IEEPA duty." Opp'n at 19. But an informed choice does not require an itemized audit of the seller's cost structure. On Plaintiff's view, no consumer ever voluntarily chooses to buy anything, because sellers do not publish their pricing formulas. Nor does Plaintiff explain how that information would have changed anything. With or without a line-item tariff figure, Plaintiff faced the same choice: to pay the posted price or decline. He chose the former.

**IV. The Declaratory Relief Claim Fails with the Substantive Claims.**

Plaintiff agrees that Count IV rises or falls with his substantive claims. *See* Opp'n at 20. Because those claims fail, Count IV fails with them. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022).

**V. Amendment Would Be Futile.**

Plaintiff concludes by requesting leave to amend. *See* Opp'n at 20–21. This Court should deny that request. The complaint's deficiencies are not missing facts or pleading errors; they are legal deficiencies that render amendment futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The additional facts Plaintiff offers to plead—which products he bought, through which channels, and what portion of each price reflected tariffs—would not save his claims. On any version of those facts, Plaintiff voluntarily paid an agreed price, received exactly what he paid for, and now seeks a share of a refund the government owes Nintendo. No Washington doctrine supports that claim, and no amendment can supply one. Dismissal should be with prejudice.

**CONCLUSION**

This Court should dismiss Plaintiff's lawsuit with prejudice.

---

[6] Plaintiff's contrary authorities involved necessities purchased under shelter-in-place orders, *Greenberg*, 3 Wash. 3d at 461–62, and out-of-pocket losses flowing from a data breach, *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017), not discretionary goods purchased at the market price.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

*I certify that this memorandum contains 4,182 words, in compliance with the Local Civil Rules.*

DATED: September 4, 2026

**STOEL RIVES LLP**

*/s/ Vanessa Soriano Power*
Vanessa Soriano Power (WSBA No. 30777)
**STOEL RIVES LLP**
600 University St.
Ste 3600
Seattle, WA 98101
Tel: (206) 624-0900
vanessa.power@stoel.com

Alison I. Stein (*Pro Hac Vice*)
Cayman C. Mitchell (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Tel: (212) 891-1600
astein@jenner.com
cmitchell@jenner.com

Alexander M. Smith (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Tel: (213) 239-5100
asmith@jenner.com

Adam Unikowsky (*Pro Hac Vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue NW, Suite 900
Washington, DC, 20001-4412
Tel: (202) 639-6041
aunikowsky@jenner.com

*Attorneys for Defendant Nintendo of America Inc.*